340 So.2d 557 (1976)
STATE of Louisiana
v.
Arturo Carlos MONTOYA.
No. 58116.
Supreme Court of Louisiana.
November 8, 1976.
Rehearing Denied December 14, 1976.
*558 Robert J. Stamps, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William L. Brockman, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
Arturo Carlos Montoya, charged by bill of information with having committed armed robbery in violation of La.R.S. 14:64, was tried by a jury, convicted, and sentenced to serve ninety-nine years at hard labor. Defendant relies on twenty-six assignments of error for reversal of his conviction and sentence. We find merit in assignments seventeen and twenty-three and therefore pretermit consideration of the other assigned errors.
The offense for which defendant was prosecuted was the armed robbery of Joseph Marino, a drug clerk working at the Livaudais Pharmacy, 2733 Dauphine Street, New Orleans. To establish defendant's participation in the armed robbery the State, in addition to the testimony of Mr. Lawton J. LeBlanc and Mr. Joseph Marino, relied on the defendant's silence under police interrogation regarding his possession of drugs after his arrest.
*559 LeBlanc and Marino testified that two armed and masked assailants[1] entered the Livaudais Pharmacy on January 25, 1973, and forcibly took from them a substantial sum of money and some narcotics. Their descriptions of the robbers and their clothes matched those of the defendant and his companion at the time of their arrest shortly after the robbery. The State called Detective Gerald W. Laird, of the New Orleans Police Department, who related the details of the suspects' apprehension, and that at the time of their arrest they possessed the property identified as having been taken in the robbery.

ASSIGNMENT OF ERROR NO. 17
During the prosecution's direct examination of Detective Laird, the arresting police officer, the following interrogation, objection, ruling and testimony occurred:
"BY [PROSECUTOR]:
"Now, did you ask Montoya where he got these drugs, and
"BY [DEFENSE ATTORNEY]:
"Your Honor, at this time, I would object to any testimony in regard to what
"BY THE COURT:
"Well, let him answer yes or no.
"BY [DEFENSE ATTORNEY]:
"Alright.
"BY THE WITNESS:
"Yes, we did ask him.
"BY [PROSECUTOR]:
"Q. You did ask him.
"A. Yes sir.
"Q. Did he tell you?
"A. No sir. * * *"
In Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) the United States Supreme Court held that a state prosecutor may not seek to impeach a defendant's exculpatory story by cross-examining the defendant about his failure to have told the story after receiving Miranda warnings at the time of his arrest. The Court stated:
"The warnings mandated by [Miranda], as a prophylactic means of safeguarding Fifth Amendment rights, see Michigan v. Tucker, 417 U.S. 433, 443-444, 94 S.Ct. 2357, 2363-2364, 41 L.Ed.2d 182 (1974), require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these Miranda rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. See United States v. Hale, 422 U.S., at 177, 95 S.Ct. at 2137. Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. Mr. Justice White, concurring in the judgment in United States v. Hale, 422 U.S. at [171] 182-183, 95 S.Ct. [2133] at 2139 [45 L.Ed.2d 99] put it very well: `. . . when a person under arrest is informed, as Miranda requires, that he may remain silent, that anything he says may be used against him, and that he may have an attorney if he wishes, it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony . . Surely Hale was not informed here that his silence, as well as his words, could be used against him at trial. Indeed, anyone *560 would reasonably conclude from Miranda warnings that this would not be the case.'" 426 U.S. at 617, 96 S.Ct. at 2245, 49 L.Ed.2d at 97-98. (Footnotes omitted.)
In the instant case the defendant did not take the stand. Thus, there is even less justification here for the State to call attention to his silence at the time of arrest than there was in Doyle, because the argument cannot be made that he was under cross-examination and thus fair game for impeachment by use of his silence at the time of his arrest. Therefore, we conclude it was clearly reversible error for the trial court to permit the State to use the arrested person's silence against him at trial. Doyle v. Ohio, supra; cf. United States v. Hale, 422 U.S. 71, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975).
The only quibble we foresee with this ruling is the contention that the defense attorney waived his objection by saying "alright" after the trial judge overruled his objection and by failing to reiterate his objection. However, the record is equally subject to the interpretation that, having unsuccessfully objected to the improper threshold question by which the prosecution gained entrance to a forbidden area of inquiry, defense counsel concluded his objection to this line of questioning was preserved. Therefore, in the absence of clear and convincing evidence that defense counsel intended to waive his objection to a substantial violation of defendant's constitutional rights, we will construe the record against such a waiver. The trial judge should have sustained his objection because it was directed to a question which could have no purpose other than to elicit from the police officer the fact that the defendant remained silent upon his arrest in contravention of defendant's rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Doyle v. Ohio, supra. Cf. United States v. Hale, supra.

ASSIGNMENT OF ERROR NO. 23
Before the case was submitted to the jury, defendant objected to the trial judge's jury instruction that one in unexplained possession of recently stolen property is presumed to be the thief. Because defendant objected to the trial judge's instructions on the effect of the La.R.S. 15:432 presumption before the case was submitted to the jury, he has preserved his right to raise the error in this Court. See State v. Beard, 312 So.2d 278 (La.1975) and cases cited therein.
The portion of the charge objected to is as follows:
"* * * Now, in law there are numerous presumptions. A legal presumption relieves him in whose favor it exists from the necessity of any proof, but, may nonetheless be destroyed by rebutting evidence. Such is the presumption that the defendant intended the natural and probable consequences of his acts, that the defendant is innocent, that the defendant is sane and responsible for his actions, that the person in the unexplained possession of property recently stolen is the thief, that evidence under the control of a party and not produced by him, was not produced because it would not have aided him, and so on.
"From the recent possession of stolen property, guilt may be inferred unless, there is a reasonable account given of the property as having been lawfully and not feloniously obtained. This inference or presumption is strengthened or weakened in accordance with the length of time between the theft and the time of the finding of the property. * * *"
Defendant contends this instruction had the effect of abridging his constitutional right to remain silent in the face of the State's accusation. United States Constitution Amendment V; La. Constitution Article I, § 11 (1921). Compare, La. Constitution Article I, § 16 (1974). Under the particular facts presented by this case and for the reasons set out below, we agree that defendant's constitutional rights, as recognized by the United States Supreme Court in Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), were violated by the trial judge's instructions to the jury.
*561 Throughout the State's case, the assistant district attorney repeatedly told the jury that the law required it to presume that one in unexplained possession of recently stolen property committed the theft.[2] Though the State had charged Montoya with armed robbery, it did not attempt to apply the jurisprudentially created presumption that one in the unexplained possession of property recently taken in an armed robbery is presumed to be the robber. State v. Braxton, 257 La. 183, 241 So.2d 763 (1970). Had this been the case, our recent decision in State v. Searle, 339 So.2d 1194 (La.1976), No. 57,262, would have mandated reversal, because we therein held the jurisprudential extensions of the La.R.S. 15:432 presumption to armed robbery and simple burglary were "unconstitutional, unwise and must be overruled."
Instead, the State was content to rely simply on the presumption as it is formulated in article 432 of Title 15, that one in the unexplained possession of property recently stolen is the thief. Of course, theft is but one element of the crime of armed robbery. La.R.S. 14:64.
The constitutionality of La.R.S. 15:432 insofar as it is used to create a presumption of theft (rather than armed robbery or burglary) has been affirmed, State v. Womack, 283 So.2d 708 (La.1973), and although, as we noted in Searle, we have some misgivings as to its continued constitutional vitality, and urge the legislature to reconsider its wisdom, we are not compelled to decide, in the present case, whether the presumption is unconstitutional on its face under the test we announced in State v. Searle, supra. Our examination of the record in the present case convinces us that the trial judge's instructions regarding the La.R.S. 15:432 presumption, because of the factual context which preceded them, substantially violated defendant's rights.
As we said in State v. Searle, supra,

"* * * La.R.S. 15:432 is * * * so indefinite in some respects that it easily lends itself to unconstitutional application, depending upon the trial judge's use of it in articulating his jury instructions." 339 So.2d at 1203.
The phrase "unexplained possession" cannot constitutionally refer to defendant's failure to take the stand in his own defense. Furthermore, under the United States Supreme Court's ruling in Doyle v. Ohio, supra, the fact of an accused's post-arrest silence cannot be used to establish that his possession of recently stolen property is "unexplained." See also, United States v. Hale, supra. As we stated in State v. Searle, supra,
"* * * If the meaning of the presumption as conveyed to the jury by an instruction in a particular case is that the defendant must personally explain his possession of the stolen property to the police or the jury, reversible error will have been committed. * * * Additionally, the statute cannot be interpreted to mean, or a jury led to believe, that the defendant must do anything other than produce some evidence contrary to or, at most, create a reasonable doubt as to the presumed fact in order to destroy the *562 presumption." 339 So.2d at 1203. (Citations omitted.)
During the course of his direct examination of Detective Laird, the State's attorney, in an apparent attempt to establish that Montoya's possession of the stolen property was unexplained, elicited, over defense objection, the fact of Montoya's failure to explain his possession of the stolen property after his arrest. In his closing argument the assistant district attorney made the following observations:
"* * * But the other three items, they definitely positively identified them as the drugs that were taken from them just an hour and forty-five minutes before they were found on the person of the defendant. Now, this is the presumption. Now, of course, just like the presumption of innocence can be rebuttedthe presumption that the defendant is a thief can be rebutted.
"* * *
"* * * Now, gentlemen, as I said, this presumption can be rebutted. It can be overcome. How? By complying with the law, furnishing explanations of how he came into the possession of this property, which we now know is stolen.
"* * *
"* * * He refused to tell him where he got this bottle, or the rest of the drugs, or the money. So that, you have no explanation. You have the presumption unrebutted. Now, this is one instance where the defendant does have to do something. He's got to explain his possession. He's got to explain how he came into possession of this property." (Emphasis supplied.)
Counsel objected to these arguments on the ground that they violated Montoya's constitutional right to remain silent.[3] The trial judge overruled counsel's objections and commented to the jury:
"Gentlemen of the jury, when these arguments are over, I will instruct you on what the law is. You are to apply that law to the evidence which you heard from this witness stand to arrive at your judgment. * * *"
It was incumbent on the trial judge, in giving his jury instructions relative to the presumption of theft that can be drawn from the unexplained possession of stolen goods, to inform the jury of the significance of the phrase "unexplained possession."
In view of the State's improper references to defendant's post-arrest silence, which the State had used to show that Montoya's possession of the stolen property was "unexplained," the jury, given only the trial judge's instruction previously reproduced, probably assumed that Montoya's post-arrest silence should be considered by them in determining whether to apply the La.R.S. 15:432 presumption. That is, because of the State's improper references to the defendant's post-arrest silence, and its implicit references to his failure to take the stand, the reference in the judge's charge to "unexplained possession" most likely meant to the jury that the accused was required either personally to come forward and explain his possession of the property to them at trial, or to have explained satisfactorily his possession of the stolen property to the police at the time of his arrest. In sum, the judge's instruction in the context of this case called attention to the defendant's post-arrest silence and his failure to take the stand.
Had the State not used Montoya's post-arrest silence to show that his possession of the recently stolen property was unexplained, perhaps the trial judge's instruction would not have substantially violated his constitutional rights. Given the facts of this case, it did.
For the foregoing reasons defendant's conviction and sentence are set aside, and the case is remanded for a new trial.
SANDERS, C. J., and SUMMERS and MARCUS, JJ., dissent.
NOTES
[1] Defendant's alleged co-participant, Vinton Lee, pleaded guilty to the armed robbery charge brought against him. His conviction and sentence are not before this Court for review.
[2] During voir dire examination the State's attorney addressed the jurors over numerous defense objections as follows:

"* * * I just spoke of the presumption of innocence. Well, that presumption is contained in Title 13, [sic] Section 432 of the Louisiana Revised Statutes. I'd like to read you the entire article so that you can better understand it. `A legal presumption'and the judge is going to charge you on this at the conclusion of the trial also. `A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; * * * [one such presumption is] that the person in the unexplained possession of property recently stolen is the thief
"* * *
"Now, all this means, is that there are certain things that are so logical that the law presumes it. The law says that you don't have to prove it. This doesn't mean that it can't be rebutted. For instance, remember the word `unexplained'I would like to reiterate the legal presumption, that a person who is found in possession of recently stolen property is presumed to be the thief."
Also, the State's attorney discussed the presumption at length in his closing argument, over defense objection.
[3] We are of the opinion that defendant, because of these comments, would have been entitled to a mistrial under La.C.Cr.P. art. 770 if counsel had requested it.