365 So.2d 484 (1978)
STATE of Louisiana
v.
Emmett Raymond PROCELL.
No. 61923.
Supreme Court of Louisiana.
November 13, 1978.
Rehearing Denied December 14, 1978.
*486 Gravel, Roy & Burnes, Alexandria, for defendant-appellant.
William J. Guste, Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., James L. Davis, Dist. Atty., Abbott J. Reeves, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
In an indictment filed on February 17, 1977 the Grand Jury of Sabine Parish charged Emmett Raymond Procell with the December 16, 1976 first degree murder of John Patrick Meshell. La.Rev.Stat.14:30.[1] In a trial by jury defendant Procell was found guilty as charged. In a separate sentencing hearing the jury recommended life imprisonment without benefit of probation, parole, or suspension of sentence. Prior to imposition, defendant's motion for a new trial was denied, and he was then sentenced to life in prison at hard labor without benefit of probation or parole. This appeal followed. All assignments of error urged on this appeal are considered.
During the early morning hours of December 16, 1976 defendant Procell joined Eugene Sepulvado and Patrick Meshell in the Carolyn Lounge, an establishment near Zwolle in Sabine Parish where drinks were served and the customers danced. Procell, Sepulvado and Meshell sat together at a table. When Debra Parker arrived at the lounge both Meshell and Procell asked her to dance. She declined Procell's invitation, telling him she was going to dance with Meshell. After dancing with Debra Parker, Meshell returned to the table at which Sepulvado and Procell were seated. Procell was then heard to say, "Go ahead and laugh if you think it's funny." Immediately thereafter a shot was heard and Meshell fell across the table fatally wounded. Procell sat at the table momentarily, placed a revolver in his trouser belt, and walked out of the lounge. He made no effort to assist Meshell. Procell was arrested later that morning and charged with murder.
Assignments 3 and 4: Prior to trial, defendant filed a motion to quash, alleging that the indictment failed to charge an offense which is punishable under a valid statute. La.Code Crim.Pro. art. 532(1). Particularly, the motion alleged that the statute defining first degree murder and prescribing the death penalty therefor was unconstitutional, for it was in violation of the Eighth Amendment prohibition against cruel and unusual punishment, and in contravention of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.
*487 Further, the motion alleged that Article 814 of the Code of Criminal Procedure, Louisiana's responsive verdict statute, is unconstitutional in that it permits verdicts of guilty, guilty of second degree murder, guilty of manslaughter, and not guilty to be rendered in response to a charge of first degree murder. For these reasons the statute lacks standards to guide the jury's selection of persons charged with first degree murder. It is alleged that these responsive verdicts invite the jurors to disregard their oaths and choose a verdict for a lesser offense whenever they feel that the death penalty is inappropriate.
To support these contentions the defense relies upon the decision of the United States Supreme Court in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976).
The trial judge denied the motion to quash, and the defense assigns error.
Roberts v. Louisiana, supra, held the mandatory death penalty unconstitutional in Louisiana's first degree murder statute enacted in 1973. Since that time, Louisiana's first degree murder statute (La.Rev. Stat.14:30) has been amended by Act 657 of 1976, the statute under which defendant is being prosecuted in the instant case. The statute no longer prescribes a mandatory death penalty when considered together with Act 694 of 1976, referred to hereinafter.
By Act 694 of 1976 the Legislature enacted Article 905 of the Code of Criminal Procedure. According to its provisions, following a verdict of guilty in a capital case, a sentence of death may be imposed only after a sentencing hearing. In such a hearing before the same jury that determined the issue of guilt the focus is upon the circumstances of the offense and the character and propensities of the offender. Aggravating and mitigating circumstances are considered. A sentence of death can be imposed only upon the unanimous recommendation of the jury. If, at the hearing, the jury finds the sentence of death inappropriate, it shall recommend a sentence of life imprisonment without benefit of probation, parole or suspension of sentence, and the judge shall impose sentence accordingly. See Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
Thus Roberts v. Louisiana, supra, is no longer authority for a claim that Louisiana's death penalty statute is unconstitutional. Furthermore, while the effect of the responsive verdict statute (La.Code Crim.Pro. arts. 809, 814) on the imposition of the death penalty may have been a factor which induced the Roberts Court to invalidate the death penalty, the responsive verdict statute applicable to first degree murder was not declared unconstitutional.
As we noted in State v. Palmer, 344 So.2d 964 (La.1977), "The thrust of the Roberts decision was the Court's condemnation of the mandatory character of the death penalty. . . ." Therefore, when the Legislature amended the first degree murder statute and enacted the sentencing hearing statute, it did not consider that amendment or repeal of the responsive verdict statutes was necessary. Insofar as Articles 809 and 814 of the Code of Criminal Procedure were concerned they remained effective and valid. Other decisions since Roberts have recognized the viability of these responsive verdict statutes. State v. Qualls, 353 So.2d 978 (La.1978); State v. James, 339 So.2d 741 (La.1976); State v. Finley, 337 So.2d 1151 (La.1976); State v. Turner, 337 So.2d 1090 (La.1976); State v. McCoy, 337 So.2d 192 (La.1976).
Moreover, at the sentencing hearing, the State's attorney announced that the State was not asking for the death penalty.
These assignments are without merit.
Assignment 5: Because the State did not ask for the death penalty and the jury did not recommend that punishment, the defense contends it was error for the court to permit the District Attorney during voir dire examination to excuse prospective jurors for cause because they expressed conscientious scruples against the infliction of capital punishment. La.Code Crim.Pro. art. 798(2).
*488 This contention is based on the theory that the juror's attitude toward the death penalty no longer plays a part in the determination of guilt in a first degree murder trial because the guilt determination phase of the bifurcated trial of a first degree murder charge does not concern sentencing; that question is subsequently determined at the sentencing hearing. La.Code Crim.Pro. art. 905.
By permitting the State to challenge jurors for cause when they expressed conscientious scruples against the death penalty, it is argued the prosecutor was able to challenge more jurors than the defendant because the defendant is not authorized to challenge on that ground. Consequently, defendant exhausted his peremptory challenges long before the State.
Several answers are suggested to this contention. The District Attorney did not announce that the State was not asking for the death penalty until after the verdict was rendered and the record sheds no light on when this decision was made. If it was not made until after the verdict, the voir dire examination on the question of the juror's attitude toward the death penalty was certainly relevant before that time. This is so because in all probability the same jurors would participate in the sentencing hearing and their attitude would be relevant to a charge which prescribed the death penalty. For, in the event of a guilty verdict, the same jurors would be called upon to decide whether the death penalty should be recommended. Nor do we understand that the District Attorney's recommendation on sentence is binding upon the jury. Despite the fact that the State did not ask for the death penalty, the jury was empowered to recommend otherwise, thus making their attitude toward the death penalty material to the prosecution under any circumstance when the charge is first degree murder. It was proper, therefore, to ascertain the attitude of the jury on that subject.
The defense has not designated that portion of the record which supports the contention that the defendant's peremptory challenges were depleted long before the State exhausted its peremptory challenges. And if he did make such a showing, we do not understand that it would prejudice the defendant to the extent that he would be denied a fair trial.
Assignments 6, 7 and 9: Defendant contends that error occurred during voir dire examination, during the testimony at the trial, and during the argument to the jury because the District Attorney and his assistant expressed their own personal opinions as to the guilt of the accused. Although defense counsel moved for a mistrial on each occasion, the motions were denied and defendant contends that the trial judge did not adequately admonish the jury.
The defense cites five such instances in brief. Because one of the remarks was not objected to, we only consider four.
While examining a prospective juror on voir dire the prosecutor stated the elements of the crime the State must prove are: the killing was not an accident; and it did not occur in self-defense or the defense of others. The prosecutor concluded: "Now these are the basic elements of the crime of first degree murder. The State has to prove those to you and obviously we wouldn't be here if we didn't think we could do that." When defense counsel objected, the trial judge admonished the jury as follows:
"I would admonish you to disregard any statement that would tend to destroy the absolute presumption of innocence which the accused has throughout this trial. This is accorded any defendant in this or any other case. I would instruct you that each of you understands that an accused in any criminal case is presumed to be innocent until the burden of proving his guilt beyond a reasonable doubt has been established. Any remark made by the State's attorney which would tend to minimize that very precious right is to be disregarded by you."
In his opening statement to the jury the District Attorney said:
"After you have heard and seen all the evidence, we believe you will agree that this accused, Emmette Raymond Procell, *489 is beyond a reasonable doubt guilty of the crime for which he stands charged, murder in the first degree of John Patrick Meshell, and that you will have no alternative but to return a verdict of guilty as charged."

No contemporaneous objection was made by the defense, but after a while defense counsel approached the bench and again moved for a mistrial. The motion was denied but the trial judge did admonish the jury at length, instructing them to disregard any statements made by the prosecutor "as to what he believed that you will do." He emphasized that the personal beliefs of the prosecutor were impermissible and should not be considered. Whereupon the District Attorney finished his opening statement.
Later, in the State's rebuttal argument, the Assistant District Attorney, referring to the testimony of a State's witness, remarked, "Frankly, I thought she made a very believable witness and that the evidence she gave was strong."
Again defense counsel objected and the trial judge sustained the objection, admonishing the jury to disregard what the prosecutor "believed." Continuing his rebuttal argument and again referring to trial testimony of the same witness, the prosecutor said, "I certainly am of the opinion that such a remark would not form the basis for antagonism on her part." When the defense objected, the trial judge again instructed the jury that it should disregard the prosecutor's expression of opinion.
Although it is generally considered erroneous for the prosecuting attorney to declare his individual opinion or belief that the accused is guilty when the accusation is made in such a manner that the jury may understand that the prosecutor's belief is based on evidence dehors the record, such an opinion is permissible if the prosecutor refers to, or it is apparent that his opinion is based on, the evidence of record. State v. Sercovich, 246 La. 503, 165 So.2d 301 (1964). In this case the beliefs and opinions expressed were based upon the evidence produced at the trial. There was no attempt on the part of the prosecutors to express beliefs or opinions based upon facts or circumstances dehors the record. None of the remarks directly urged a guilty verdict on the basis of evidence outside the record or solely on the beliefs of the prosecutors. Most of the remarks expressed the prosecutor's opinion of a witness' testimony; an argument on the credibility of a witness being proper. La.Code Crim.Pro. art. 774; State v. May, 339 So.2d 764 (La. 1976).
If it can be considered that the remarks of the prosecutors were impermissible under the rule expressed in Sercovich, the law nevertheless provides a remedy for the defendant. Article 771 of the Code of Criminal Procedures mandates that the judge "shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the State, in the mind of the jury." The judge did admonish the jury in the instant case, and properly ruled that a mistrial should not be granted. La.Code Crim.Pro. art. 775; State v. Duke, 358 So.2d 293 (La.1978); State v. Rittiner, 341 So.2d 307 (La. 1977); State v. Landry, 262 La. 32, 262 So.2d 360 (1972).
These assignments are without merit.
Assignments 12 and 14: The defense contends that the trial judge erroneously overruled several objections to testimony elicited by the State to the effect that after receiving the Miranda warnings, defendant remained silent after arrest and while he was incarcerated prior to his release on bail.
In brief the defendant asserts that evidence was elicited by the State over defense objections in three ways; 1) by direct examination on the State's case in chief; 2) by cross-examination of the defendant; and 3) by direct examination of a witness on rebuttal.
Deputy Floyd Terrell, Jr., one of the two arresting officers, testified for the State. While he was being examined by the prosecutor, this colloquy occurred.

*490 "Q. [By the prosecutor] Did you at the time you arrested Mr. Procell, did you read him his rights?
A. [Deputy Terrell] I advised him verbally of his rights.
Q. Would you tell him what you advised him of?
A. I advised him that he had the right to remain silent; anything he said could and would be used against him in a court of law; he had a right to have an attorney present during questioning; if he was unable to employ one, one would be appointed to him by the State.
Q. Did he seemingly understand the rights that you read to him?
A. He didn't comment either, any way.
Q. Did he make any statement to you at that time concerning this incident?
A. He did not.
Q. Has he to this day made any statement.
A. He has not.
Q. to you concerning this incident? Did he sign a waiver of rights?
A. He did not.
Q. He did not at that time? Has he to this date signed a waiver of rights?
A. Not to my knowledge."
At this point defense counsel objected and moved for a mistrial. Defense counsel made no request for an admonition. In his argument on the objection, the prosecutor stated that the interrogation was designed to establish that Procell received the Miranda warnings and that he was not compelled to make a statement.
Read in the light of the prosecutor's argument the questions and answers may plausibly be considered to have that meaning. And it is feasible to conclude that the jurors understood the witness' answers in that light and not as an effort by the State to attack defendant's credibility with an inference that he failed to deny his guilt.
Insofar as this quoted interrogation is concerned, it may be read as evidence establishing that Procell received the Miranda warnings and claimed the rights incident thereto by not giving a statement, and that he did not waive those rights.
As the State's next witness, the prosecutor called Lovell Knowles, the other arresting officer. He testified that he accompanied Deputy Terrell when they arrested Procell at 2:40 on the morning of December 16. When he was asked by the prosecutor if Procell made "any statements in your presence?", defense counsel objected, the question was not answered, and the witness was tendered for cross-examination.
Procell took the stand to testify in his own behalf. His version of the killing was that it was accidental. He testified that as he sat at the table in the lounge with Sepulvado and Meshell, Meshell asked to see Procell's handgun which Sepulvado was then holding. Sepulvado handed the gun to Meshell and shortly thereafter, as Meshell was handing the gun back to Procell, Procell reached for the pistol and as he gripped the handle it discharged killing Meshell.
On cross-examination this colloquy occurred:
"Q. [The prosecutor] Do you recall when is the first time that you ever told anybody that you were passing that gun around the table?
A. [Defendant] I could have told Andrew Sepulvado.
Q. Did you tell any of the officers or anyone else you talked to that day or for the next week that you were passing that gun around the table?
A. I could have told Andrew Sepulvado.
Q. Did you tell any of the officers or anyone else you talked to that day or for the next week that you were passing that gun around the table?
A. No.
Q. Did you tell anybody there and I'm not suggesting"
An objection was made that the prosecutor was eliciting testimony from defendant concerning his failure to make statements to the officers. No motion for a mistrial *491 was presented and the defense did not request an admonition to the jury.
It should be emphasized that this last interrogation is of the defendant on crossexamination. And again it may be said that the interrogation was not an effort to elicit testimony of defendant's post-arrest silence after receiving the Miranda warnings. A review of defendant's entire testimony makes it clear that the questioning was proper cross-examination of defendant which pertained precisely to his testimony on direct examination.
Another incident at the trial involves the interrogation of Jamie Sliman, a co-employee of defendant, who visited defendant in jail soon after he was incarcerated. He was asked if defendant told him anything about the shooting. He answered that he never asked him and defendant did not mention the occurrence. No inference should be gained from this abbreviated encounter that the State sought to establish defendant's refusal to talk.
Otherwise, if these colloquies are read as interrogations eliciting testimony of Procell's post-arrest silence after having been given the Miranda warnings, the motion for a mistrial and request for admonition were the proper vehicles under Louisiana Law for righting the claimed injury to defendant. Article 771 of the Code of Criminal Procedure requires only that the trial judge admonish the jury to disregard the quoted remarks and comments. However, no request that the trial judge admonish the jury was made. Granting a mistrial in this situation was therefore discretionary with the trial judge "if [he] . . . is satisfied that an admonition is not sufficient to assure the defendant a fair trial." La.Code Crim.Pro. art. 771; State v. Smith, 336 So.2d 867 (La.1976). The trial judge was satisfied that defendant could have a fair trial.
This Court is not unmindful of the decisions of the United States Supreme Court in United States v. Hale, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) and Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Hale stands for the proposition that it is reversible error to elicit testimony concerning defendant's silence during police interrogation after he has been arrested and given the Miranda warnings. While the Hale decision may not be binding in this case since it involved an evidentiary rule applicable to the federal judiciary, the case did serve as a basis for the decision in Doyle v. Ohio which elevated the same proposition to the dimension of a constitutional right applicable to the states. And, although we do not read the testimony at issue here as an effort by the State to point out defendant's silence after receiving the Miranda warnings, we shall nevertheless decide that if such an error did occur the error was harmless.
As the brief reference to the facts in this opinion disclose, the implausible defense of accident was rejected by a unanimous jury. In a three-day trial producing a record containing 825 pages, the evidence convincingly established defendant's guilt beyond a reasonable doubt, and no effort was made by the prosecution to exploit defendant's silence in order to impeach his testimony. Doyle v. Ohio, supra, and State v. Smith, 336 So.2d 867 (La.1976).
Assignment 15: After verdict and before sentence defendant filed a motion for a new trial, alleging that the verdict was contrary to the law and evidence in that there was a total absence of evidence to show that defendant had a specific intent to kill or inflict great bodily harm. In addition, defendant reurged the alleged errors which have been considered in this opinion. The motion was denied and the ruling is claimed as error on this appeal.
Louisiana's Constitution limits this Court's review of criminal conviction on appeal to questions of law. La.Const. art. V, § 5(C). It is only when there is a total lack of evidence of an essential element of a crime that a question of law is presented. For it is contrary to law that anyone should be convicted when there is no evidence of his guilt. State v. Proctor, 354 So.2d 488 (La.1977); State v. Hatter, 350 So.2d 149 (La.1977); State v. Marks, 337 So.2d 1177 (La.1976).
*492 Another rule of law relevant to the question this assignment presents is:
"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction." (emphasis added). La.Rev.Stat.15:445. See also State v. Garner, 241 La. 275, 128 So.2d 655 (1961).
From this record there are ample facts from which the requisite intent may be inferred. Among other, an eyewitness saw Procell holding the gun pointed at Meshell as it was fired.
The remaining contentions presented by the motion for a new trial involve the assignments of error already considered and found to be without merit. The motion for a new trial was properly denied.
For the reasons assigned, the conviction and sentence are affirmed.
CALOGERO, J., dissents and assigns reasons.
DENNIS, J., dissents for the reasons assigned by CALOGERO, J.
CALOGERO, Justice, dissenting.
I disagree with the majority's conclusion in connection with assignment number 14, firmly believing that the trial interrogation of Deputy Terrell warranted the mistrial sought by defense on the basis of the officer's testimony regarding Procell's silence at the time of his arrest. When the state commenced its examination of Deputy Terrell, the defense attorney was justified in believing, as he later stated he did, that the prosecutor was preparing to introduce an inculpatory statement.[1] Thus, he did not at first object to the line of questioning quoted in the majority opinion. However, when it became clear that the prosecutor sought to elicit evidence of Procell's silence at the time of the arrest, the defense attorney moved for a mistrial on the basis that the witness' testimony amounted to a comment on the defendant's failure to make a statement, in contravention of United States v. Hale, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975).
In State v. Montoya, 340 So.2d 557 (La. 1976) the state sought testimony regarding defendant's silence under police interrogation to prove that he committed the crime charged. The Court, after quoting extensively from Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), which held that a post-arrest silence may not be used to impeach a defendant who gives exculpatory trial testimony, held that it was reversible error to permit the state to use testimony about the defendant's silence. The quotation from the Doyle case contained language from the concurring opinion of Mr. Justice White in Hale, which opined that ". . . . when a person under arrest is informed, as Miranda requires that he may remain silent, that anything he says may be used against him . . . it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest . . . ."
As in Montoya, the state attempted to use Procell's silence after arrest in conjunction with other evidence to establish commission of the crime. That the defendant subsequently took the stand in this case (unlike in Montoya) is of no relevance, since the evidence of his silence was presented during the case-in-chief (as well as at other times during the trial), at a time when it was by no means certain that Procell would testify in his own defense.
The trial judge should have granted the mistrial sought. The questions of the state and answers of Deputy Terrell could have no other effect, in my view, than to call to the jury's attention the fact of defendant's *493 silence. The prosecutor's claim that the questions were designed to establish that the defendant was given his Miranda warnings and, thus, was not compelled to make a statement is irrelevant, in light of the effect of the exchange. Moreover, the State is only required to establish that Miranda warnings were given before it introduces evidence of a confession or inculpatory statement. See State v. Henry, 352 So.2d 643 (La.1977). It need not establish such fact in connection with the testimony of an officer who will relate that no confession or statement was made.
I respectfully dissent.
NOTES
[1] La.Rev.Stat. 14:30:

"First degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.
"Whoever commits the crime of first degree murder shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence in accordance with the recommendation of the jury."
[1] The state's answer to the defense prayer for oyer stated that the defense was not entitled to have furnished oral statements, possibly implying that the state possessed such statements. Before its opening statement, the prosecution complied with article 768 of the Code of Criminal Procedure, advising of its intention to use statements made to investigating officers or others. Thus the belief of the defense attorney had an ample basis.