SCHOTT, Judge.
Defendant was charged with and convicted of attempted second decree murder in violation of LSA-R.S. 14:27 and 14:30.1 and sentenced to fifty years without benefit of parole, probation, or suspension of sentence.
John Landry was in the business of selling cleaning materials which were given to him by his employer. On the evening of March 27, 1984 he parked his van near the St. Thomas Project and made a delivery to a nearby address. Upon his return to the van he was shot five times. Officer Roberts, who was in the vicinity on an unrelated matter was flagged down by a pe *1228 destrian and was told about the shooting. He found the defendant inside the van bleeding profusely and called for assistance. Landry was rushed to the hospital, and the investigation was turned over to homicide detectives. A few weeks later when Landry had recovered sufficiently a detective came to him with a group of photographs from which Landry identified the defendant as his assailant. Officer Granderson subsequently arrested defendant.
Landry testified that he was in the driver’s seat when the first shot was fired and struck him in his hand. He got up and tripped over a tool box, he heard two men talking as they approached the van, and he saw the defendant in the open side door of the van shoot him with a .45 caliber pistol. He was shot five times and is permanently unable to walk. Before the shooting Arthur Holland and Henry Davis were in the van with him, but they both ran off after the first shot was fired. Landry testified that he knew the defendant and had been in a fight with him on the night before the shooting.
Davis, called as a defense witness, testified that he was not in the van when the shooting started but he had left the van earlier to buy some beer at a store some distance away. When he returned carrying two quarts of beer the police were there and he learned about the shooting. He stated that he knew the defendant. On cross examination by the prosecutor Davis was asked why he would walk such a distance to buy beer when there was a bar across the street from where the van was parked and he stated that the beer was cheaper at the store. In response to the prosecutor’s questions he specifically denied telling the policeman that Phillip Car-mouche, the defendant, had done the shooting.
Arthur Holland testified in rebuttal that he and Henry Davis were in the van with Landry when he saw two men approaching the van with drawn guns, and he (Holland) ran off. Although he was acquainted with the defendant he could not say whether or not the defendant was one of the gunmen.
Officer Roberts was the first police officer on the scene and the last to leave. After he discovered Landry in the van and radioed for help he questioned the bystanders including Henry Davis. Recalled as a rebuttal witness Roberts stated that Davis told him Phillip Carmouche, the defendant, shot Landry and he (Roberts) gave this information to the homicide detective, Melvin Winnis. Officer Winnis testified also as a state rebuttal witness that he interviewed Davis and Davis told him that Car-mouche had done the shooting.
The defendant called as witnesses several of his relatives and friends who testified they were all with the defendant in the bar across the street from the van when they heard the shooting and went out on the street to see what was happening.
ASSIGNMENT OF ERROR 1
By this assignment defendant claims that the trial court erred in failing to grant a mistrial when the state elicited testimony from police officer Granderson that defendant refused to make a statement following his arrest.
The testimony is as follows:
Q When you say you picked him up, tell the members of the jury exactly what you did?
A I went over to the Lockup and I brought him back to the station, typed up the necessary papers to have him booked, and then brought him back to the Lockup under arrest.
Q Did you tell him what his rights were?
A Yes, I did.
Q What rights are these?
A I advised him of his constitutional rights. I used a little card. I don’t happen to have it on me, but it’s down in the car.
Q Did he make any statement?
A No, he didn’t make any statement
BY MR. MOSELEY:
No further questions.
*1229 BY MR. PHARR:
No questions.
BY THE COURT:
You may step down, Officer Grander-son.
Since the state had gotten no statement by defendant against his interest, this line of questioning arguably served no purpose but to call attention to his silence in violation of his Fifth Amendment rights as in State v. Montoya, 340 So.2d 557 (La.1976). Unlike the cited case, however, in the instant case there was no objection by defense counsel so that the objection was waived by defendant and is not properly before this court. C.Cr.P. art. 841. In State v. Procell, 365 So.2d 484 (La.1978) the court held that the proper vehicle for objection by a defendant to this sort of testimony was a motion for mistrial and request for an admonition to the jury. Defendant took no such action in this case.
While we do not decide the issue in this case we note that the circumstances of this case do not necessarily support the same result as in Montoya even if there had been a timely objection at trial. First, as in State v. Mosley, 390 So.2d 1302 (La.1980), the examination did not stress or emphasize defendant's right to remain silent; and, second, there is some question that this short colloquy at the very beginning of the trial left such an impression on the jurors that it had any effect on their deliberations. If the issue were properly before us these considerations might support the conclusion that the questioning constituted harmless error at worst as in State v. Procell, supra.
ASSIGNMENT OF ERROR 2
By this assignment defendant contends the court should have declared a mistrial when the state recalled John Landry as a rebuttal witness and elicited the following testimony:
Q Mr. Landry, anyone ever attempt to keep you from coming to testify today?
A Yes, sir.
Q Who is that?
A The in-laws of the defendant.
Q Do you know who they are?
A Supposed to be his mother-in-law.
Q Anybody else came?
A His wife.
Q What did she ask you to do?
A Not to come to Court.
Q Did she offer you anything?
A Two hundred dollars.
Q Did you inform anybody of this?
A Yes, I called the district attorney and told them what was happening.
Q Did you talk to me about this?
A Yes, sir.
Q Did I tell you what I did about that?
A Yes, sir.
Q Who did I call about that?
A You said you called them and let them know not to do that.
Q Do you have any reason to frame Phillip Carmouche?
A No, sir.
Q If it was Calvin Hatch that did the shooting would you lie about Calvin Hatch in order to get Phillip Car-mouche?
A No, sir.
Q Are you here because you are telling the truth?
A Yes, sir.
Q Nothing but the truth?
A Nothing but the truth.
BY MR. MOSELEY:
Thank you. No further questions.
CROSS EXAMINATION
Q Mr. Landry, isn’t it a fact that Mrs. Carmouche and Phillip’s mother came to you to beg you to tell the truth?
A Rephrase you questions? I didn’t understand you.
Q I said, did not they come to your house and beg for you to tell the truth?
A No, sir.
Q Isn’t it a fact they told you, and you know it’s a fact, that Phillip did not shoot you?
*1230 A No, sir.
Q They begged you and you made the offer of two hundred dollars?
A No, sir. Why should I offer something to take the offer of two hundred dollars and my life is like it is how?
Q Maybe to get some more pine oil or whatever.
A No, sir.
Here again, defense counsel made no objection to the testimony thereby waiving objection and precluding consideration of the issue on appeal. State v. Ratcliff, 416 So.2d 528 (La.1982).
In his oral argument, present counsel (who did not represent defendant at the trial but who was employed to represent the defendant on appeal), asked this court to consider the issues raised in this and the previous assignment even though no contemporaneous objections were made at the trial. He did not assert that defendant was deprived of effective assistance of counsel as in State v. Ratcliff, supra, but instead argued that these errors were so blatant, so clearly prejudicial, and so influential on the jurors that defendant was deprived his basic constitutional right to a fair trial. Counsel argued that the Landry testimony was not only inadmissible per se but had no place in the trial as “rebuttal” testimony because there was no evidence produced by the defense which could justify or invite rebuttal in the form and substance of Landry’s testimony.
Henry Davis’s testimony was rather implausible to start with, and it was directly contradicted by that of Landry, Holland, and Officer Roberts. Furthermore, his credibility was severely damaged by the testimony of the two policemen that he told them Phillip Carmouche, the defendant, had shot Landry. In an attempt to expose Davis’s motive for lying the prosecutor asked him if he had been threatened by Carmouche’s family or whether he was afraid of them which he denied. Perhaps this testimony supplied a thin thread to Landry’s testimony that defendant’s wife and mother-in-law were the type of persons who would call him and offer a bribe if he would not testify.
In a full blown hearing on the issue, if properly presented to a court, the ultimate question would be whether this objectionable testimony influenced the verdict of the jury. There is some merit to the proposition that the errors were harmless whether viewed separately or cumulatively.
By these comments we do not intend to adjudicate the issue of prejudicial versus harmless error resulting from the quoted testimony; but we do intend to demonstrate that the testimony is not so obviously prejudicial that objections made for the very first time on appeal should be considered in utter disregard of the time tested and sound principle that objections not made contemporaneously may not be urged on appeal and may be considered only upon a proper pleading and showing of ineffective counsel.
ASSIGNMENT OF ERROR 3
The state concedes that this assignment is meritorious. Because defendant was sentenced to prison without benefit of parole, probation, or suspension for an offense whose prescribed authorized sentence does not carry the restriction against this trilogy of remissions the sentence is illegal. State v. See, 467 So.2d 525 (La.1985); State v. Diggs, 423 So.2d 643 (La.1982).
Accordingly the conviction is affirmed, the sentence is vacated, and the case is remanded to the trial court for resentenc-ing.
CONVICTION AFFIRMED; SENTENCE VACATED; AND CASE REMANDED.