JOAN BERNARD ARMSTRONG, Chief Judge.
 

 ^STATEMENT OF CASE
 

 The defendants, Akeem A. Joseph (hereinafter “Joseph”) and Roy D. Patterson (hereinafter “Patterson”), were charged by bill of information filed on May 7, 2009 with one count each of armed robbery while armed with a handgun. Both men entered a not guilty plea on May 12, 2009. A motion hearing began on November 12, 2009 and concluded on January 5, 2010. The district court found probable cause and denied the motions to suppress the evidence and identification as to both defendants. On March 17, 2010, the state filed a motion and order to invoke the additional sentencing provision of La. R.S.
 
 *551
 
 14:63.3(A), which was granted by the district court. They were tried jointly by a jury on March 18, 2010, and both defendants were found guilty as charged. A motion for mistrial was denied. Both defendants were sentenced on April 1, 2010. Joseph was sentenced to serve twenty-five years at hard labor, to run concurrently with the sentences imposed in cases 489-054 and 492-639, and with any other sentence he may be serving.
 

 12Patterson was sentenced to serve twenty-five years at hard labor, to run concurrently with any other sentence he may be serving. Each defendant’s motion for appeal was granted; Patterson’s motion to reconsider sentence was denied. A multiple bill charging Patterson as a second felony offender was filed. On June 18, Patterson was adjudicated a second felony offender. After vacating the previous sentence imposed, the district court resen-tenced him to serve fifty years at hard labor. Patterson’s motion to reconsider sentence was denied; his motion for appeal was granted.
 

 STATEMENT OF FACT
 

 On March 5, 2009, the victim, Gerald Joseph (no apparent relation to the defendant, Akeem Joseph), boarded public transportation en route to a friend’s home on St. Peter Street. He exited the trolley at Canal and Broad Streets. A woman and a man (the defendant, Joseph) exited the trolley at the same time; the man met up with another man (the defendant, Patterson) and a woman on the street. The men followed the victim (hereinafter referred to sometimes by his first name, “Gerald” in order to distinguish him from the defendant of the same last name) into a convenience store, where he purchased some snacks. Upon exiting the store, the smaller of the two men (Patterson) asked Gerald whether he had change for a ten, and he responded that he only had twenties. Gerald proceeded to walk through the parking lot at AutoZone. As he approached the second block of St. Peter Street, he heard footsteps. When Gerald turned around, Joseph ran up to him, put a gun directly in his face, and told him to empty his pockets; Patterson |stook everything from Gerald’s pockets. After robbing Gerald, Joseph and Patterson ran down South White Street.
 

 Gerald proceeded to his friend’s house on St. Peter Street, where he called 911. Officer Sam and his partner, Officer Carter, were dispatched to the 2800 block of St. Peter Street. When they arrived in the area, they were flagged down by the victim. The victim gave a description of the suspects and the direction of their flight that was broadcast over the radio by dispatch. Officers Sam and Carter proceeded in that direction. While en route, Detective Baldwin advised via radio that he had just observed two subjects fitting the description enter the Discount Zone on North Broad Street. Detective Baldwin and his partner waited in the parking lot until backup arrived, and all of the officers entered the store together. The two subjects were detained and placed in the back of separate police vehicles. Once Gerald arrived at the scene, he identified the two men separately as the two men who robbed him; Joseph as the man armed with the gun, and Patterson as the man who took the money from his hands.
 

 Joseph and Patterson were arrested and advised of their
 
 Miranda
 
 rights. In the search incident to the subjects arrest, Officer Sam found in Joseph’s pockets an ammunition clip and $143.00 in cash; Patterson had $60.00 in cash. No weapon was found.
 

 At trial the clothing worn by the two men upon their arrest was identified: Joseph’s clothes consisted of jeans, long sleeve white t-shirt, black tennis shoes,
 
 *552
 
 and a baseball cap. Patterson’s clothes consisted of a white t-shirt, long white |4socks, thermal underwear, and black, Crock-like shoes. The victim at trial stated that Patterson was also wearing a colorful hoodie.
 

 Patterson’s Aunt Hattie testified that she raised Patterson and that he lived with her at 825 North White Street. She also noted that he was paid an allowance of $100.00 per month and that he did not work. On the day of the robbery, she stated that she, Patterson, her sisters, and a couple of nieces and nephews were playing cards on the upstairs porch of the house. Patterson’s friend, Joseph, came to the house later that day. Joseph’s girlfriend was already downstairs at the house. Patterson and Joseph walked to the store around the corner. Aunt Hattie became worried when they did not return from the store after a few minutes so she sent her nephews to go see what was keeping them. When the nephews returned, she learned that the police were detaining the two men. Aunt Hattie denied ever seeing Patterson with a gun. She stated that he was not wearing a hoodie, specifically noting that he does not wear jackets. She did say that Patterson wore long underwear.
 

 Lionel, Patterson’s cousin, also lived on North White Street. He stated that Patterson was living with them since getting out of jail. On the day of the robbery, Lionel stated that he, Patterson, and Joseph’s girlfriend were downstairs smoking, and that they were “chiefed out.” When Joseph arrived, Patterson and Joseph walked to the store to buy a cigar. While they were gone, Lionel observed police vehicles slowly circling the area. Because of this, he decided to go check on his cousin. When he got to the gas station, the police were detaining Patterson and |,5Joseph in a police vehicle. Lionel stated that he walked up to the police vehicle and asked what was going on, and he told the police that Patterson was his cousin. At some point he was informed that his cousin was suspected of a robbery. Lionel stated that he never saw his cousin with a gun.
 

 ERRORS PATENT
 

 A review of the record reveals two errors patent. First, the district court failed to sentence the defendants to a mandatory additional five years imprisonment pursuant to La. R.S. 14:64.3(A). Thus, the sentence is illegally lenient.
 

 The record shows that the state filed a Motion and Order to Invoke the Additional Sentencing Provision of La. R.S. 14:64.3(A) as to each defendant. The Motion was granted by the district court on March 17, 2010. (R. 90-93). The district court mentioned the Motion during the sentencing of Joseph and noted that the minimum sentence he could receive was fifteen years. It then imposed a sentence of twenty-five years at hard labor. No mention of the Motion was made during the sentencing of Patterson.
 

 La. R.S. 14:64.3(A) states:
 

 When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.
 

 | fiIn an unpublished opinion, this Court remanded the matter to the district court for imposition of the additional five-year sentence.
 
 State v. Hayes, unpub.,
 
 2007-1280 (La.App. 4 Cir. 5/28/08), 983 So.2d 1033,
 
 writ denied,
 
 08-1744 (La.4/3/09), 6 So.3d 768. However, unlike here, Hayes received only the minimum sentence under La. R.S. 14:64.
 

 
 *553
 
 In
 
 State v. Burton,
 
 09-0826 (La.App. 4 Cir. 7/14/10), 43 So.3d 1073,
 
 writ denied,
 
 10-1906 (La.2/11/11) 56 So.3d 999, this Court held that in cases where minimum sentences are not imposed, the sentences are indeterminate, requiring the sentences to be vacated and the matter remanded for resentencing according to law for clarification of whether the defendant’s sentence includes any additional punishment under La. R.S. 14:64.3. Thus, Joseph’s twenty-five year sentence should be vacated and remanded for resentencing.
 

 Patterson also received an initial twenty-five year sentence; however, that sentence was vacated when he was resen-tenced as a multiple offender to serve fifty years at hard labor. Under La. R.S. 15:529.1, the minimum sentence Patterson could receive as a second felony offender was forty-nine and one-half years. Because his fifty-year sentence exceeds the statutory minimum by six months, i.e., less than five years, Patterson’s sentence must also be vacated and remanded for resen-tencing.
 

 Second, the district court failed to restrict parole eligibility on either defendant’s sentence as required by La. R.S. 14:64. Although the district court [ 7neglected to restrict parole eligibility on the sentences, La. R.S. 15:301.1(A) self-activates the correction and eliminates the need to remand for a ministerial correction of the sentence.
 
 State v. Williams,
 
 00-1725 (La.11/28/01), 800 So.2d 790.
 

 PRO SE ASSIGNMENT OF ERROR NUMBER 1
 

 By this assignment of error, Joseph asserts that the evidence is insufficient to support his conviction. When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.
 
 State v. Hearold,
 
 603 So.2d 731, 734 (La.1992).
 
 State v. Marcantel,
 
 00-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55. Therefore, this assignment of error will be considered first.
 

 In
 
 State v. Brown,
 
 03-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18, the Court set forth the standard for determining a claim of insufficiency of evidence:
 

 When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.”
 
 State v. Neal,
 
 00-0674, (La.6/29/01), 796 So.2d 649, 657 (citing
 
 State v. Captville,
 
 448 So.2d 676, 678 (La.1984)). See also
 
 State v. Sykes,
 
 04-1199 (La.App. 4 Cir. 3/9/05), 900 So.2d 156.
 

 |Jn this case, Joseph was charged with and convicted of one count of armed robbery with a firearm. Armed robbery is defined by La. R.S. 14:64 as “... the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.”
 

 Joseph does not dispute that he robbed Gerald. Rather he argues that he was armed only with an empty gun magazine that Gerald mistakenly thought was a gun, and he notes that no gun was found by the police. He urges that the evidence presented by the state only proves that he committed the crime of first-degree robbery, La. R.S. 14:64.1, as he only led Ger-
 
 *554
 
 aid to believe that he was armed with a dangerous weapon.
 

 At trial, Gerald testified that Joseph ran up to him, put a gun directly into his face, and told him to empty his pockets. Joseph and Patterson stole everything from his pockets. Gerald was certain of his identification of Joseph and Patterson as the perpetrators of the armed robbery.
 

 The testimony of an eyewitness that establishes all the elements of the offense, coupled with an identification of the defendant as the perpetrator, ordinarily is sufficient to support a conviction.
 
 State v. Banks,
 
 96-652, 96-658 (La.App. 5 Cir. 1/15/97), 694 So.2d 401. Here, Gerald’s testimony establishes all of the elements of the offense, and his identification of Joseph was absolute. The jury apparently found Gerald’s testimony credible. Thus, viewing the evidence in the light most favorable to the prosecution, the jury reasonably found that Joseph was Rguilty of armed robbery with a firearm. See also
 
 State v. Oliver,
 
 526 So.2d 895 (La.App. 4 Cir.1988), where this Court found that the evidence was sufficient to support the defendant’s convictions for armed robbery even though the gun used in the armed robbery was never found. This assignment of error is without merit.
 

 PRO SE ASSIGNMENT OF ERROR NUMBER 2
 

 By this assignment of error, Joseph asserts that La.C.Cr.P. art. 782(A) is unconstitutional insofar as it allows for non-unanimous verdicts in non-capital felony cases. Notably, the jury verdict in this case was unanimous. Joseph therefore lacks standing to raise the issue as there is nothing to show that he was actually harmed by the purported error. Furthermore, the record does not reflect that Joseph objected, therefore, Joseph’s constitutional challenge to La.C.Cr.P. art. 782 is procedurally barred from review by this court. La.C.Cr.P. art. 930.4.
 

 Even assuming that this issue was properly preserved for review, this Court has found the argument to be without merit on several occasions. See
 
 State v. Barbour,
 
 09-1258 (La.App. 4 Cir. 3/24/10), 35 So.3d 1142,
 
 writ denied,
 
 10-0934 (La.11/19/10), 49 So.3d 396,
 
 cert. denied, Barbour v. Louisiana, -
 
 U.S. -, 131 S.Ct. 1477, 179 L.Ed.2d 302 (2011); and
 
 State v. Taylor,
 
 09-0041 (La.App. 4 Cir. 9/4/09), 21 So.3d 421; both following
 
 State v. Bertrand,
 
 08-2215, 08-2311 (La.3/17/09), 6 So.3d 738.
 

 I ^ASSIGNMENT OF ERROR BY COUNSEL FOR JOSEPH AND PATTERSON
 

 Both defendants argued through counsel that the district court erred by denying the motion for mistrial after the state brought the defendants’ post-Mi
 
 randa
 
 silence to the jury’s attention in contravention of
 
 Doyle v. Ohio,
 
 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Patterson’s
 
 post-Miranda
 
 silence was brought up on two occasions; Joseph’s silence was brought up once.
 

 Regarding Patterson, the first occasion occurred during the direct examination of Officer Sam when the state asked the officer whether Patterson made any statements to the officer and whether Patterson said anything about being at his aunt’s house or that he was just going to the gas station. Officer Sam replied in the negative. Counsel objected, and the objection was sustained.
 

 The second occasion for Patterson also included Joseph, and it occurred during the testimony of Officer Carter. Officer Carter was asked whether either of the defendants made a statement to her. Both attorneys objected before the officer responded, and their objections were sustained.
 

 
 *555
 
 Following Officer Carter’s testimony, the jury retired to the jury lounge. Both attorneys then moved for a mistrial, arguing that the state impermissibly brought attention to the defendants’ exercise of their right to remain silent
 
 post-Miranda
 
 through its questioning of the officers.
 

 The trial court denied the motion, noting that one of the defendants intended to present an alibi defense and reasoned that the state’s questioning was apparently intended to show whether anything was said by the defendant regarding his alibi. |nIt then admonished the state to cease that line of questioning because the state knew that no statements had been made by either defendant. Both defense attorneys objected to the court’s ruling; neither requested an admonishment of the jury.
 

 However, following the close of testimony, and before closing arguments, Patterson’s attorney proposed a special jury instruction to which the trial court agreed. Following closing arguments, the trial court instructed the jury in relevant part as follows:
 

 You must consider only evidence which was admitted during the trial. You may not consider evidence which you were instructed to disregard or to which an objection was sustained.
 

 [[Image here]]
 

 Additionally, upon arrest, each defendant was advised of his rights to remain silent. No presumption of any kind may be raised, and no inferences of any kind may be drawn from the fact that the defendants chose to exercise their constitutional rights to remain silent.
 

 Under La.C.Cr.P. article 771, when the prosecutor or a witness makes a reference to a defendant’s post-arrest silence, the trial court is required, upon the request of the defendant or the State, to promptly admonish the jury. In such cases where the trial court is satisfied that an admonition is not sufficient to assure the defendant a fair trial, the court may grant a mistrial upon motion of the defendant.
 
 State v. Kersey,
 
 406 So.2d 555, 559 (La.1981). The granting of a mistrial is within the discretion of the trial court if the trial court is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
 
 State v. Procell,
 
 365 So.2d 484, 491 (La.1978).
 

 [12In
 
 Doyle v. Ohio,
 
 the United States Supreme Court addressed the issue of whether a prosecutor could seek to impeach a defendant’s exculpatory account, offered for the first time at trial, through his failure to offer the statement at the time of his arrest after receiving
 
 Miranda
 
 warnings. The Court held that the use, for impeachment purposes, of a defendant’s silence after receiving
 
 Miranda
 
 warnings at the time of arrest, violates the Due Process Clause of the Fourteenth Amendment.
 

 Both counsel for Joseph and Patterson liken their clients’ case to that of
 
 State v. Montoya,
 
 340 So.2d 557 (La.1976). In Montoya, the defendant, like here, did not take the stand. During direct examination of the arresting officer, the state asked the officer if the officer had asked the defendant, after he was arrested, where he had gotten the drugs. The officer responded that he did ask, but the defendant did not answer. The defense objected to the question, but did not move for a mistrial. The record did not indicate whether the judge admonished the jury. On appeal, the court in
 
 Montoya
 
 found that the reference to defendant’s silence after arrest was reversible error in that it violated the defendant’s constitutional right to remain silent under
 
 Miranda.
 
 In
 
 Montoya,
 
 the court never mentioned La.C.Cr.P. art. 771, nor, did it mention a case that it decided just prior to
 
 Montoya, State v. Smith,
 
 336 So.2d 867 (La.1976).
 

 
 *556
 
 In
 
 Smith,
 
 the prosecutor, in summarizing a police officer’s testimony on direct examination, stated that the defendant had refused to give a statement while under custodial arrest. The Louisiana Supreme Court found that the statement [ ismade by the prosecutor was “incidental and inadvertent” and there was no “indication of the deliberate intent of the state to inject or exploit the issue,” and thus, the trial court did not err in denying the defendant’s motion for a mistrial. The court noted further that a brief remark to post-
 
 Miranda
 
 silence does not mandate a mistrial or reversal where the trial as a whole was fairly conducted, the proof of guilt is strong, and the state made no use of the silence for impeachment. Notably, in
 
 Montoya,
 
 other errors compounded the state’s reference to the defendant’s silence; the state implicitly referred to the defendant’s failure to testify, and a reference to “unexplained possession” was made in the jury instruction.
 

 In the case at hand, the record shows that the trial as a whole was conducted fairly and that the evidence in favor of a guilty verdict was overwhelming. Thus, this case may be distinguished from
 
 Montoya.
 
 After being reprimanded, the prosecutor made no further references to the defendants’ post-arrest silence. Further, unlike in
 
 Montoya,
 
 the jury was read a special jury instruction as requested by the defense.
 

 In
 
 Greer v. Miller,
 
 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987), a case cited by the state, the Court held that the
 
 Doyle
 
 rule was not violated where the lower court sustained the objection to the state’s question touching upon the defendant’s postarrest silence; no further questioning or argument with respect to silence occurred; and the court specifically instructed the jury, as here, that it should disregard any questions to which an objection was sustained. In Greer, the prosecutor asked the defendant on cross-examination, “why didn’t you tell this story to anybody when |14ycm got arrested?” See also
 
 State v. Varnado,
 
 97-2823 (La.App. 4 Cir. 5/19/99), 737 So.2d 240, where this Court found that a mistrial was not warranted despite the state’s questioning of a detective as to whether the defendant made a statement after his arrest. One of the factors considered by the court was the fact that the lower court instructed the jury that the defendant was not required to make any statements and that his silence should not be held against him.
 

 Here, the question asked by the state during Officer Carter’s testimony, as to whether either defendant made a statement, does not warrant a mistrial insofar as Joseph is concerned. Though the questioning of Officers Sam and Carter regarding whether Patterson, made a statement was more egregious, we find that a mistrial is likewise not warranted. The district court immediately sustained counsel’s objections. The state ceased the line of questioning after being reprimanded, and no argument with respect to silence was made. As in Greer and
 
 Vamado,
 
 a special jury instruction was given to the jury regarding post-arrest silence. Moreover, any error that may have occurred was harmless as the error was not attributable to the verdict.
 
 Chapman v. California,
 
 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). This assignment of error is without merit.
 

 For the foregoing reasons, we affirm the convictions of both defendants and vacate both defendants’ sentences and remand for resentencing.
 

 CONVICTIONS AFFIRMED; SENTENCES VACATED AND REMANDED FOR RESENTENCING