MARC E. JOHNSON, Judge.
 

 1 ^Defendant, Preston Lee Pierce, appeals his convictions and sentences for two counts of aggravated rape and two counts of sexual battery. For the reasons that follow, we affirm his convictions and sentences.
 

 On December 20, 2007, defendant was indicted with aggravated rape of a juvenile. On January 20, 2009, a superseding indictment was filed in which defendant was indicted with four charges as to four separate juveniles: two counts of aggravated rape in violation of LSA-R.S. 14:42 (counts 1 & 2) and two counts of sexual
 
 *1270
 
 battery in violation of LSA-R.S. 14:43.1 (counts 8 & 4). Defendant pled not guilty to all four charges and proceeded to trial. On October 10, 2010, a 12-person jury found defendant guilty as charged on all four counts. The trial court subsequently sentenced defendant to life imprisonment at hard labor each on counts one and two; ten years at hard labor on count three; and 25 years at hard labor on count four. All sentences were imposed without benefit of parole, ¡.-¡probation, or suspension of sentence and were ordered to run consecutively to each other.
 

 FACTS
 

 In August 2007, J.G.,
 
 [1]
 
 at the age of seven,
 
 [2]
 
 lived with her mother, father, and two older sisters in Kenner, Louisiana. Although her mother and father were married and lived together, they were not emotionally together; J.G.’s mother often dated, and in August 2007, she was dating defendant. On August 25, 2007, J.G.’s mother attended a party with defendant’s sister while defendant babysat J.G. While babysitting J.G., defendant took her to his bedroom, applied a lubricant to her vaginal and anal area, and contacted her vagina and anus with his penis.
 
 [3]
 

 Defendant was arrested the next day and news of his arrest was published in the newspaper. As a result of the publicity, other women came forward with similar accusations against defendant, including defendant’s adult daughter, C.P.
 
 [4]
 
 C.P. alleged that her father had “messed” with her when she was a child. C.P. testified that starting when she was six or seven years old until she was 15 or 16, defendant made her spread her legs, applied his saliva to her vaginal area, contacted her clitoris with his penis, and ejaculated on her stomach. C.P. also testified that on one occasion defendant achieved full penetration of her vagina with his penis.
 
 [5]
 

 J.T.
 
 [6]
 
 was another victim of defendant. J.T. and her boyfriend were friends with defendant’s son, Preston Lee Pierce, Jr. (“Lee”). J.T. testified that in June 2003, she, her boyfriend, and Lee were at Lee’s aunt’s house for defendant’s Rbirthday. Alcohol was consumed and J.T. became intoxicated to the point of vomiting. J.T. then went to bed with her boyfriend, with whom she had consensual sex before going to sleep without putting her pants back on. In the bed, J.T.’s boyfriend slept closest to the wall while J.T. slept on the open side of the bed. J.T. was awakened in the middle of the night by a penis penetrating her vagina. She thought it was her boyfriend at first, but when she opened her eyes, she saw her boyfriend sleeping next to her and discovered it was defendant who was on top of her.
 
 [7]
 

 
 *1271
 
 The fourth person to come forward with similar accusations against defendant was M.B.
 
 [8]
 
 M.B.’s mother testified that she and her two daughters shared an apartment with defendant from about April 1994 until September 1994. M.B., the younger daughter, testified that around this time, on more than one occasion, defendant took her to his bedroom, laid her on his bed, told her she had a rash, and applied Vaseline to her vagina and vaginal area.
 
 [9]
 

 LAW & DISCUSSION
 

 ASSIGNMENT OF ERROR ONE
 

 In his first assignment of error, defendant contends that the trial court erred in not granting a mistrial on four grounds: (1) a State’s witness referred to his post-arrest silence; (2) a victim referred to other crimes evidence during her testimony; (3) the trial court failed to sever the four counts in the indictment; and (4) the prosecutor misstated the law in regard to how the jury should view the evidence.
 

 A mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to defendant that deprives him of a reasonable expectation |5of a fair trial. Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed absent an abuse of discretion.
 
 State v. Lagarde,
 
 07-123 (La.App. 5 Cir. 5/29/07), 960 So.2d 1105, 1113-14,
 
 writ denied,
 
 07-1650 (La.5/9/08), 980 So.2d 684.
 

 La.C.Cr.P. art. 775 provides for a mistrial if prejudicial conduct inside or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized under La.C.Cr.P. arts. 770 or 771. A mistrial under Article 775 is discretionary and is warranted only when trial error results in substantial prejudice to the defendant depriving him of a reasonable expectation of a fair trial.
 
 State v. Davis,
 
 07-544 (La.App. 5 Cir. 12/27/07), 975 So.2d 60, 68,
 
 writ denied,
 
 08-380 (La.9/19/08), 992 So.2d 952.
 

 Article 770 provides the grounds for a mandatory mistrial. It provides that a mistrial shall be granted, upon motion of the defendant, when a remark or comment is made within the hearing of the jury by the judge, district attorney, or a court official during trial or in argument and that remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible or the failure of the defendant to testify in his defense.
 

 As a general rule, Article 770 does not apply to testimony by a state witness, since a witness is not considered a “court official.” However, an impermissible reference to another crime deliberately elicited by the prosecutor is imputable to the State and triggers the rule mandating a mistrial.
 
 State v. Lagarde,
 
 960 So.2d at 1113. Unsolicited and unresponsive testimony is not chargeable against the State to provide a ground for mandatory reversal of a conviction.
 
 State v. Ventris,
 
 10-889 (La.App. 5 Cir. 11/15/11), 79 So.3d 1108, 1122. Further, a statement is not chargeable to the State solely because it was in direct response to questioning by the prosecutor. Although a prosecutor might have more artfully 1 ^formulated the question that provoked a witness’s response, where the remark was not deliber
 
 *1272
 
 ately obtained by the prosecutor to prejudice the rights of the defendant, it is not the basis for a mistrial.
 
 Id.
 

 Under La.C.Cr.P. art. 771, a mistrial is discretionary when a witness makes an irrelevant remark that might prejudice the defendant. Article 771 gives the trial court the option to either admonish the jury, upon motion of the defendant, or, if an admonition does not appear sufficient, to declare a mistrial.
 
 State v. Johnson,
 
 10-209 (La.App. 5 Cir. 10/12/10), 52 So.3d 110, 124,
 
 writ denied,
 
 10-2546 (La.4/1/11), 60 So.3d 1248. A mistrial should be granted under Article 771 only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial.
 
 State v. Thomas,
 
 08-390 (La.App. 5 Cir. 1/27/09), 8 So.3d 80, 86-87,
 
 writ denied,
 
 09-626 (La.11/25/09), 22 So.3d 170.
 

 Reference to Defendant’s Posh-Amst Silence
 

 Defendant first argues that the trial court erred in denying his motion for a mistrial based upon a violation of
 
 Doyle v. Ohio,
 
 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).
 
 [10]
 
 Defendant contends that Lieutenant Grey Thurman impermis-sibly referred to defendant’s post-arrest silence during his testimony. Defendant argues this warranted a mistrial because the jury would infer guilt from his silence.
 

 The State maintains there was no
 
 Doyle
 
 violation. It asserts that the officer’s testimony was not offered to emphasize defendant’s invoking his right to remain silent, but to give a complete picture of the officer’s investigative efforts and to 17establish why no further information was obtained from defendant. Further, the State contends that even if there was a
 
 Doyle
 
 violation, it was a harmless error.
 

 During the direct examination of Lieutenant Grey Thurman, the following colloquy occurred:
 

 Q: After you concluded your taped interview with Preston Lee Pierce—
 

 A: Correct.
 

 Q: — did you continue to get other information from other sources?
 

 A: Yes, I did.
 

 Q: Outside of his presence?
 

 A: Correct.
 

 Q: And at some point did you elect to go back in and attempt to obtain a second statement from Preston Lee Pierce?
 

 A: Yes, sir, I did.
 

 Q: Okay, and when you went back in did you confront him with various inconsistencies?
 

 A: Absolutely.
 

 Q: And at that point did he give you another statement?
 

 A: No, he did not.
 

 At this point, defense counsel objected to this testimony as an impermissible reference to defendant’s invocation of his right to remain silent. He then moved for a mistrial, which the trial judge denied.
 

 It is well settled that a prosecutor cannot make reference to the fact an accused exercised his constitutional right to remain silent, after he had been advised of the right, solely to ascribe a guilty mean
 
 *1273
 
 ing to his silence or to undermine, by inference, an exculpatory version related by the accused, for the first time at trial.
 
 State v. Olivieri,
 
 03-563 (La.App. 5 Cir. 10/28/03), 860 So.2d 207, 213. But, the State may pursue a line of questioning that attempts to ^summarize the extent of the investigation, when such questions are not designed to exploit the defendant’s failure to claim his innocence after his arrest in an effort to impeach his testimony or attack his defense.
 
 Id.
 
 An oblique and obscure reference to a defendant’s post-arrest silence, where the examination does not stress the right to remain silent or attempt to elicit testimony regarding the defendant’s failure to respond to police questioning does not constitute reversible error.
 
 State v. Robinson,
 
 04-964 (La.App. 5 Cir. 2/15/05), 896 So.2d 1115, 1126.
 

 Under La.C.Cr.P. art. 771, when the prosecutor or a witness makes a reference to a defendant’s post-arrest silence, the trial court is required, upon the request of the defendant or the State, to promptly admonish the jury. In such cases where the trial court is satisfied that an admonition is not sufficient to assure the defendant a fair trial, the court may grant a mistrial upon motion of the defendant.
 
 State v. Robinson,
 
 896 So.2d at 1126, citing
 
 State v. Kersey,
 
 406 So.2d 555, 559 (La.1981). A brief reference to a defendant’s post-arrest silence does not mandate a mistrial or reversal when the trial as a whole was fairly conducted, the proof of guilt is strong, and the prosecution made no use of the silence for impeachment purposes.
 
 Id.
 

 In
 
 State v. Olivieri, supra,
 
 a police officer referenced the defendant’s silence during his testimony summarizing the defendant’s post-arrest statement. In particular, the officer stated that when he told the defendant he wanted to go over his statement again because the officer believed the defendant was leaving some facts out of the incident, the defendant put his head down and requested a lawyer. This Court noted that the officer’s testimony was elicited for the purpose of presenting to the jury a description of how the police investigation culminated and showing the jury that the defendant’s entire statement was before them. As such, this Court found no mistrial was warranted.
 
 Olivieri,
 
 860 So.2d at 214.
 

 | nThis Court relied on several factors in determining a mistrial was not warranted: (1) the prosecutor did not pose a specific question regarding the defendant’s post-arrest silence, but rather inquired about the contents of the statement the defendant made to police; (2) the prosecutor did not draw attention to the fact the defendant invoked his right to remain silent subsequent to giving a statement; (3) the prosecutor did not pursue the issue of the defendant’s post-arrest silence after the officer testified that the defendant terminated the statement, but rather moved on and questioned the officer on an unrelated topic pertaining to the gathering of additional evidence; (4) the State did nothing further to emphasize the defendant’s post-arrest silence or try to get the jury to make a negative inference from his silence; and, (5) the judge admonished the jury that it could not hold the defendant’s post-arrest silence against him.
 
 Id.
 

 Similarly, in
 
 State v. Kersey,
 
 406 So.2d 555 (La.1981), the defense challenged the prosecutor’s examination of the arresting officer on the basis that it elicited testimony regarding the defendant’s post-arrest silence. The prosecutor asked the arresting officer, “[d]id [defendant] give any further statements or did he assert his right to remain silent at this point?” to which the arresting officer responded that the defendant asserted his right.
 
 Id.
 
 at 559. The supreme court found the reference to
 
 *1274
 
 the defendant’s silence, when considered in context with the rest of the officer’s testimony, was made in an attempt to show that the entire statement made to the officers had been provided to the jury. The supreme court noted the testimony showed the defendant was advised of his
 
 Miranda
 
 rights and then willingly answered a succession of questions. The supreme court further noted the reference to defendant’s post-arrest silence “arose at the close of the officer’s testimony and was more a way of exploring how the interrogation was concluded than an effort to call attention to the silence.”
 
 Id.
 
 The supreme court |inheld the defendant was not prejudiced by the reference to his post-arrest silence and, therefore, a reversal of the conviction was not warranted.
 

 In the present case, Lt. Thurman did not testify that defendant invoked his right to remain silent; rather, he testified that when asked to give another statement in light of inconsistencies with his story, defendant did not do so. After Lt. Thurman testified about his failed attempt to get another statement from defendant, which drew the motion for mistrial, the State did not pursue the issue but rather moved to the next step in the investigation. A review of Lt. Thurman’s entire testimony shows that in questioning Lt. Thurman, the State was attempting to establish a timeline of the investigation and to show that defendant’s entire statement had been provided to the jury. The examination did not stress defendant’s right to remain silent; rather, it merely referenced a step in the course of Lt. Thurman’s investigation. As such, we find the trial court did not abuse its discretion in not granting a mistrial.
 

 Reference to Other Crimes Evidence
 

 Defendant next argues that the trial court erred in denying his motion for a mistrial based upon a victim’s reference to evidence of other crimes. Specifically, defendant contends that C.P., defendant’s daughter, referenced other crimes evidence when she stated during her direct examination “[a]nd then when I was a kid my dad got arrested.” Defendant argues this statement entitled him to a mistrial.
 

 As stated above, a mistrial is required when a judge, district attorney or a court official references inadmissible other crimes evidence. While Article 770 does not generally apply to testimony by a State witness because witnesses are not considered “court officials,” its application may be triggered if an impermissible reference to other crimes is deliberately elicited by the prosecutor because such | ^testimony is imputable to the State.
 
 State v. Santos,
 
 09-789 (La.App. 5 Cir. 4/13/10), 40 So.3d 167, 174,
 
 writ denied,
 
 10-1080 (La.11/24/10), 50 So.3d 828.
 

 Factors considered in determining whether a mistrial is warranted under Article 770 include whether the statement was deliberately elicited by the district attorney, whether it was responsive to the question, and whether the witness purposely uttered it to prejudice the defendant.
 
 State v. Jones,
 
 41,299 (La.App. 2 Cir. 11/9/06), 942 So.2d 1215, 1233. Ambiguous or obscure references to other crimes made without explanation or elaboration do not prejudice the defendant.
 
 Id.
 
 Further, an impermissible reference to other crimes is subject to a harmless error analysis.
 
 State v. Lagarde,
 
 07-123 (La.App. 5 Cir. 5/29/07), 960 So.2d 1105, 1114,
 
 writ denied,
 
 07-1650 (La.5/9/08), 980 So.2d 684.
 

 We find C.P.’s remark was not deliberately elicited by the prosecutor in light of the questioning immediately before and after the remark and, thus, a mistrial was not warranted under Article
 
 *1275
 
 770. The prosecutor asked C.P. why she had not told anyone that her father was sexually abusing her. In response, C.P. stated: “A friend of mine said that her dad did it to her and she liked it. So I thought that it was something that just happened that I didn’t like. And then when I was a kid my dad got arrested for — .” After the bench conference on the motion for mistrial, the prosecutor’s next question to C.P. was “Do you know if your father has any siblings?” This context makes clear that the prosecutor was not deliberately attempting to elicit testimony about defendant’s previous offenses and that the remark was not responsive to the prosecutor’s question. Additionally, as soon as the witness made the remark, the prosecutor cut C.P. off and no further explanation or elaboration was offered on the matter. Thus, we find the trial court did not abuse its discretion when it denied defendant’s motion for a mistrial on this ground.
 

 _Jj¿Severance of the Four Counts
 

 Several months before trial, defendant moved to sever the offenses to which the State objected. After a hearing, the motion was denied. During trial, defendant moved for a mistrial upon the failure to sever the counts, which the trial court denied.
 

 The failure to sever is not an explicitly recognized basis for a mistrial. Nonetheless, upon review of the trial court’s denial of the motion to sever, we find no error.
 

 La.C.Cr.P. art.' 493 permits offenses to be joined if they are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan, and are triable by the same mode of trial. La.C.Cr.P. art. 495.1 provides for the severance of offenses if the joinder of offenses is prejudicial. Whether offenses should be severed under Article 495.1 is within the sound discretion of the trial court and its decision will not be disturbed on appeal absent an abuse of that discretion.
 
 State v. Lyles,
 
 03-141 (La.App. 5 Cir. 9/16/03), 858 So.2d 35, 44-45.
 

 The defendant bears the burden of proving the prejudicial joinder of offenses.
 
 Id.
 
 In determining whether prejudice may result from a joinder of offenses, a trial court should consider (1) whether the jury would be confused by the various counts; (2) whether the jury would be able to segregate the various charges and evidence; (3) whether the defendant would be confounded in presenting his various defenses; (4) whether the crimes charged would be used by the jury to infer a criminal disposition; and (5) whether, considering the nature of the charges, the charging of several crimes would make the jury hostile. Additionally, the trial court may consider whether evidence of one offense would have been admissible as other crimes evidence at the trials of the other offenses | isunder
 
 State v. Prieur,
 
 277 So.2d 126 (La.1973), and La. C.E. art. 404(B)(1).
 
 Id.
 
 at 45.
 

 In
 
 State v. Roca,
 
 03-1076 (La.App. 5 Cir. 1/13/04), 866 So.2d 867, 871,
 
 writ denied,
 
 04-583 (La.7/2/04), 877 So.2d 143, the defendant was convicted of aggravated rape, aggravated rape of a juvenile, oral sexual battery of a juvenile, and molestation of a juvenile, perpetrated upon two different victims. On appeal, the defendant argued that the trial court erred in denying his motion to sever on the basis the alleged crimes did not involve the same victims, did not occur within the same time frame, and did not take place in the same manner. Defendant also argued that the joinder of the offenses lowered the State’s burden of proof by allowing the State to use a 20-year-old rape allegation to sub
 
 *1276
 
 stantiate a recent rape charge against him and that the joinder confused the jury.
 

 This Court found no error in the denial of the motion to sever. In reaching this conclusion, we reasoned that “although the crimes were perpetrated upon different victims and at different times, they occurred under similar circumstances” and were of the same or similar character as contemplated by La.C.Cr.P. arts. 493 and 493.2. Additionally, we noted that (1) the State presented its case in a logical fashion and in such a manner as to keep the evidence pertaining to each count and each victim separate and distinct; (2) the investigation of the offenses was significantly intertwined as the officers learned of the rape of one victim while investigating the allegations involving the other; and, (3) it appeared the jury was clearly able to segregate the various counts as the trial court specifically charged the jury separately as to each offense and corresponding victim. We further noted that the evidence of each offense was relevant to establish defendant’s propensity to sexually abuse young females under his supervision and care, and found that the |14evidence of the offense committed against either victim could have been introduced at the trial of the crimes committed against the other.
 

 Also, in
 
 State v. Burks,
 
 04-1435 (La.App. 5 Cir. 5/31/05), 905 So.2d 394, 396,
 
 writ denied,
 
 05-1696 (La.2/3/06), 922 So.2d 1176, this Court found no error in the trial court’s refusal to sever the offenses. In
 
 Burks,
 
 the defendant was convicted of aggravated rape, molestation of a juvenile, aggravated crimes against nature, forcible rape, and two counts of aggravated incest, perpetrated upon three different victims. On appeal, defendant argued he was prejudiced by having all six counts tried at the same time, contending that the jury found him guilty based on the volume of charges alone, that the facts were confusing as they involved three different victims, and that the jury could not have considered each offense separately.
 

 In finding no error in the denial of the motion to sever, this Court noted that (1) the evidence showed that the multiple counts, although perpetrated upon different victims and at different times, occurred under strikingly similar circumstances and, thus, were of the same or similar character as contemplated by La. C.Cr.P. art. 493; (2) the State’s evidence was clear and consistent, and it was highly improbable that the jury was confused by the multiple counts involving the three victims; (3) the jury deliberated for less than two hours without asking for any type of clarification and rendered a unanimous verdict; (4) the defendant offered no evidence that the joinder of the offenses hindered his right to present a defense; and, (5) evidence of one offense would have been admissible as other crimes evidence at the trial of the other offense under La. C.E. art. 412.2 to show the defendant’s propensity to sexually abuse young females who were the children of women with whom he was involved.
 

 | i3In the present case, we likewise find that evidence of the offenses committed against any of the victims could have been introduced at the trial of the crimes committed against any of the others under La. C.E. art. 412.2, which allows for the introduction of evidence of similar crimes in cases involving sex offenses involving a victim who was under the age of 17 at the time of each offense. Each of the four victims was under the age of seventeen at the time of each offense and, thus, evidence of each offense is relevant to establish defendant’s propensity to sexually abuse young females who were acquaintances of his.
 

 Additionally, the investigation of the offenses was significantly intertwined since
 
 *1277
 
 the officers learned of the sexual abuse of C.P., J.T., and M.B. while investigating the allegations involving J.G. Further, it appears the jury was clearly able to segregate the various counts. The jury instructions charged the jury separately as to each count and corresponding victim, and there were four separate verdict forms executed by the jury as to each count and corresponding victim.
 

 Accordingly, we find these offenses did not warrant a severance and the trial court did not err in denying defendant’s motion to sever or in denying defendant’s motion for mistrial on this basis.
 

 Prosecutor’s Improper Closing Argument
 

 Lastly, defendant argues that a mistrial should have been granted on the basis of an improper remark made by the prosecutor during his closing argument; specifically, the prosecutor stated, “We brought four counts and we’ve brought them all together, they’re all intertwined.” Defendant contends that by this statement, the prosecutor encouraged the jury to convict him on the number of charges rather than to consider each charge individually.
 

 A prosecutor has considerable latitude in making closing arguments.
 
 State v. Jackson,
 
 04-293 (La.App. 5 Cir. 7/27/04), 880 So.2d 69, 73,
 
 writ denied,
 
 05-232 (La.5/6/05), 901 So.2d 1094. However, this latitude is not without limits. La. C.Cr.P. art. 774 provides that “[t]he argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.” A conviction will not be reversed due to improper remarks during closing argument unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict.
 
 State v. Jackson, supra.
 

 After reviewing the record, we do not find the remark at issue influenced the jury or contributed to the verdict. Prior to the remark at issue, the State made clear the separate and distinct nature of the four charges by stating:
 

 In this case[,] the State alleges four victims and there are four separate crimes against those victims, four counts. It’s going to be your duty to separate as jurors each count and the evidence as to each count. You’re going to get four, four different jury forms, verdict forms. One is to count No. 1, one is count No. 2, and so on. And so you, ladies and gentleman, have a duty and an obligation to separate the crimes that are charged and the evidence presented as it relates to those crimes, okay.
 

 Additionally, the trial judge instructed the jury as to the separate offenses as follows:
 

 When two or more offenses are charged in the same indictment, you are to consider them as completely separate. You must make a determination in each of these charges and reach a separate but independent verdict in each case. You are to consider the evidence in each case and determine which is the proper verdict in that particular case. The verdicts may be similar or dissimilar, according to how you are impressed with the evidence in each particular case.
 

 In view of the entirety of the prosecutor’s remarks and the jury instructions, we do not find the comment at issue prejudicial. Thus, we find no error in the trial court’s denial of a mistrial on this ground.
 

 1
 
 ^ASSIGNMENT OF ERROR NUMBER TWO
 

 In his second assignment of error, defendant argues that the trial court erred in finding J.G. competent to testify. Defendant contends that J.G. was incompetent
 
 *1278
 
 to testify because she had been diagnosed with two mental disorders (bipolar disorder and post-traumatic stress disorder), she made illogical statements to the examining physician, her mother testified that J.G. often lied, and her testimony appeared coached.
 

 La. C.E. art. 601 provides that every person of proper understanding is competent to be a witness except as otherwise provided by legislation. Understanding, not age, is the test of whether any person shall be sworn as a witness.
 
 State v. Cedrington,
 
 98-253 (La.App. 5 Cir. 12/16/98), 725 So.2d 565, 577,
 
 writs denied, State v. Johnson,
 
 99-190 (La.6/4/99), 743 So.2d 1249,
 
 State v. Codrington,
 
 99—431 (La.6/25/99), 745 So.2d 1182. A key determination to be made is whether the witness is able to understand the difference between truth and falsehoods. The competency of a child to testify as a witness is based not only on the child’s answers to questions testing his understanding, but also on the child’s overall demeanor.
 
 Id.
 

 The trial court is vested with wide discretion in determining the competency of child witnesses. Its ruling as to competency is entitled to great weight on appeal, and will not be disturbed absent abuse of discretion.
 
 Id.
 

 Prior to trial, a hearing was held to determine the competency of J.G. At the hearing, J.G. stated her name, age, birth date, school, grade level, and address. She was asked about the difference between telling the truth and telling a lie. J.G. was given specific statements and asked if they were true or false. She correctly distinguished all examples as truths or lies. J.G. was also asked about her understanding of her surroundings. She knew she was in a courtroom and that the 11sperson in the black robe was a judge. J.G. stated that before she could tell her story in a courtroom, she had to “pledge that [she] will tell the truth and only the truth.” She explained that “you can get in trouble,” maybe go to jail, and probably would not be able to tell your story, if you lie. J.G. promised to tell the truth if the judge allowed her to tell her story. When asked why she should tell the truth, J.G. replied, “Because if someone tries to prank you just for a not good reason and you tell a lie, you don’t go to heaven you go underground. So it’s best to tell the truth so someone can know how to help you in what way.”
 

 On cross-examination, J.G. stated that she had met with the prosecutor prior to the hearing to practice the questions he would ask. She also admitted that she had lied before. At the conclusion of the hearing, the trial judge found J.G. competent to testify.
 

 Cases with similar circumstances have upheld the competency of a child witness. In
 
 Cedrington, supra,
 
 this Court found a seven-year-old boy competent to testify. The boy was able to tell the judge his birth date and year. He explained that to tell the truth meant to “don’t story.” He stated he would be able to tell the truth. The boy further stated that “God will punish you” if you do something wrong. This Court found the boy’s testimony before the jury was coherent, and his answers were responsive to the questions asked.
 

 Also, in
 
 State v. Gaal,
 
 01-376 (La.App. 5 Cir. 10/17/01), 800 So.2d 938, 940,
 
 writ denied,
 
 02-2335 (La.10/3/03), 855 So.2d 294, this Court found a six-year-old boy, who was a victim of sexual battery and aggravated oral sexual battery, to be competent. In
 
 Gaal,
 
 the child stated that he attended church, believed in God, and promised to tell the truth. He gave the name of his school and his grade level. When questioned about what “subjects” he took in school, he did not understand.
 
 *1279
 
 However, he answered correctly when he was provided with 1 ^specific examples, When asked what it meant to tell a lie, the child responded that it was to “tell a different story.” The boy further stated that your mom and dad punish you when you tell a lie. He was given concrete examples and correctly distinguished between truth and falsehood. He admitted telling lies in the past, but stated he would tell the truth when sitting in the witness chair.
 

 In finding the child witness competent, this Court noted that the record revealed the victim knew the difference between the truth and a lie, as demonstrated by his ability to differentiate when confronted with concrete examples. We also noted that despite an incorrect response given by the child regarding the number of days in a month, the child understood and correctly responded to questions presented in a way a six-year-old child could understand.
 
 Id.
 
 at 947.
 

 Finally, in
 
 State v. Linson,
 
 94-61 (La.App. 1 Cir. 4/7/95), 654 So.2d 440, 441,
 
 writ denied,
 
 95-1120 (La.9/22/95), 660 So.2d 470, the Court found two children, ages seven and eight, competent to testify in a sexual abuse case. The Court focused on the girls’ ability to demonstrate through examples that they understood between telling the truth and telling a lie. Both children admitted telling lies in the past, but stated they would tell the truth when asked questions at trial. They both testified they believed in God and they knew God wanted them to tell the truth.
 

 Similar to these cases, J.G. correctly stated her name, age, birth date, school, grade level, and address. She stated she understood the difference between the truth and a lie, which was confirmed by two examples. She testified that she believed in God and that God wanted her to tell the truth. She was aware of her surroundings, acknowledging her presence in a courtroom in front of a judge. She was aware that she would be punished if she did not tell the truth, and she ^understood the meaning of the oath given to witnesses. J.G. also understood the importance of telling the truth to policemen and doctors. Although she admitted she had told lies in the past, she promised that she would tell the whole truth when asked questions at trial. Lastly, in regard to J.G.’s mental disorders, Dr. Hutton testified that bipolar disorder would not affect J.G.’s ability to know the difference between right and wrong.
 

 Considering the record before us, including the testimony of the child, we find the trial judge did not abuse his discretion when he found the child victim competent to testify. Accordingly, this assignment of error is without merit.
 

 ERRORS PATENT
 

 We reviewed the record for errors patent in accordance with La. C.Cr.P. art. 920 and
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975).
 

 First, the record does not reflect that defendant was notified of the sex offender registration requirements. Defendant’s convictions for aggravated rape and sexual battery are defined as sex offenses by La. R.S. 15:541(24)(a). La. R.S. 15:540,
 
 et seq.
 
 requires registration of sex offenders and La. R.S. 15:543(A) requires the trial judge to provide written notification of the registration requirement of La. R.S. 15:542 and La. R.S. 15:542.1 to the defendant. This Court has held that the trial court’s failure to provide this notification constitutes an error patent and warrants a remand for written notification.
 
 State v. Morgan,
 
 06-529 (La.App. 5 Cir. 12/12/06), 948 So.2d 199, 213. Accordingly, we remand this matter to the trial court for the purpose of providing defendant with ap
 
 *1280
 
 propriate written notice of his sex offender notification and registration requirements, using the form contained in La. R.S. 15:543.1.
 

 Second, we note the commitment is not consistent with the sentencing transcript. The commitment shows that defendant was sentenced to 10 years on 12i count four, whereas the transcript indicates defendant was sentenced to 25 years. When there is a discrepancy between the minute entry and the transcript, the transcript prevails.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983).
 

 According, we further remand the matter and order the trial court to correct the commitment to reflect that defendant received a 25-year sentence on count four as indicated in the transcript. Further, the clerk of the district court is ordered to transmit the original of the corrected commitment to the officer in charge of the institution to which defendant has been sentenced and to the Legal Department of the Louisiana Department of Corrections. La.C.Cr.P. art. 892(B)(2);
 
 State ex rel. Roland v. State,
 
 06-244 (La.9/15/06), 937 So.2d 846
 
 (per
 
 curiam).
 

 DECREE
 

 For the foregoing reasons, defendant’s convictions for two counts of aggravated rape and two counts of sexual battery and his sentences on each are affirmed. The matter is remanded to the district court for it to provide defendant with his sex offender notifications and registration requirements, and for correction of the commitment as to defendant’s sentence on count four as ordered above.
 

 CONVICTIONS AND SENTENCES AFFIRMED; REMANDED WITH INSTRUCTIONS
 

 [1]
 

 . The victim's initials, as well as the initials of the victim's family members, are used under the authority of LSA-R.S. 46:1844(W)(3), which allows the Court to identify a crime victim who is a minor or a victim of a sex offense by using his or her initials.
 

 [2]
 

 . J.G.’s date of birth is March 14, 2000.
 

 [3]
 

 . For the acts committed on J.G., defendant was charged with and convicted of aggravated rape (count 1).
 

 [4]
 

 . C.P.'s date of birth is February 17, 1982. The incidents involving C.P. occurred between February 17, 1988 and February 16, 1994, when she was six to eleven years old.
 

 [5]
 

 . For the acts committed on C.P., defendant was charged with and convicted of aggravated rape (count 2).
 

 [6]
 

 . J.T.'s date of birth is October 16, 1986. She was 16 years old on the date of the offense, which occurred between June 15 and June 23, 2003.
 

 [7]
 

 . For the acts committed on J.T., defendant was charged with and convicted of sexual battery (count 3).
 

 [8]
 

 . M.B.’s date of birth is December 27, 1990. She was three to four years old on the date of the offense, which occurred between December 27, 1993 and December 27, 1994.
 

 [9]
 

 . For the acts committed on M.B., defendant was charged with and convicted of sexual battery (count 4).
 

 [10]
 

 . In
 
 Doyle,
 
 the United States Supreme Court held that reference to a defendant’s silence at the time of his arrest and after he received the
 
 Miranda
 
 warnings for impeachment purposes violates his due process rights. The Supreme Court explained, "every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested... . it would be fundamentally unfair and a deprivation of due process to allow the arrested person’s silence to be used to impeach an explanation subsequently offered at trial."
 
 Doyle v. Ohio,
 
 426 U.S. at 617-18, 96 S.Ct. at 2244-45.