FREDERICKA HOMBERG WICKER, Judge.
|Jn this criminal appeal, defendant claims that the trial judge erred in denying his motion for a mistrial and motion for a new trial on the ground that the prosecuting attorney improperly questioned a state witness regarding defendant’s post-arrest silence during trial in violation of Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). For the following reasons, we find that the prosecutor’s reference to defendant’s post-arrest silence was clearly improper and that the trial court clearly erred in ruling that the prosecutor could query the investigating officer regarding defendant’s exercise of his Fifth Amendment privilege against self-incrimination. However, in the context of this trial, these errors do not warrant reversal. Accordingly, we affirm defendant’s conviction and sentence.

J^STATEMENT OF THE CASE

On February 13, 2012, a St. John the Baptist Parish Grand Jury indicted defendant, Spence Adams, with the second degree murder of Eric LaBranche in violation of La. R.S. 14:30.1. The trial court subsequently granted the state’s motion to amend the indictment to charge defendant with the manslaughter of Eric LaBranche in violation of La. R.S. 14:3o.[1] Defendant was arraigned and pled not guilty.
The matter proceeded to trial by jury on January 15, 2013. On the second day of trial, defendant moved for a mistrial on the ground that a state witness improperly referenced defendant’s post-arrest silence during trial. The trial judge denied the motion for mistrial and on, January 17, 2013, the jury found defendant guilty as charged. Defendant subsequently filed a motion for a new trial on the same ground, which the trial court denied. After a pre-sentence investigation, the trial judge sentenced defendant to thirty-two years im *268 prisonment with the Department of Corrections.[2] This timely appeal follows.

FACTUAL BACKGROUND

The defense and state stipulated to the following facts: (1) defendant used a nine millimeter Smith and Wesson semi-automatic pistol to kill the victim, Eric La-Branche; (2) the bullet recovered from the victim’s body came from the nine millimeter Smith and Wesson pistol used by defendant to kill the victim; and (3) the gun used to kill the victim was recovered in a nearby trash can by officers immediately after the shooting.
14At trial, the defense presented the theory that, during an argument between the victim and defendant, the victim threatened defendant with a gun — which the victim’s cousin, Lionel LaBranche, hid before the police arrived — and that defendant killed the victim in self-defense. The following testimony and evidence was presented at trial:
Sehrone LaBranche, the aunt of the victim, resides at 8880 Houma Blvd. with her daughter, Alexis LaBranche, and her son, Lionel LaBranche. Sehrone LaBranche testified that, on January 22, 2012, she observed defendant and the victim outside of her home arguing over a car radio that defendant allegedly stole from the victim the night before. Alexis LaBranche testified that defendant and the victim were underneath the carport outside her home when she overheard defendant attempting to sell to the victim a car radio in a black bag. She testified that the victim recognized the car radio as his own radio that was stolen the night before. Sehrone and Alexis LaBranche both testified that defendant and the victim then stood near the street arguing and “tusseled” over the black bag containing the car radio. They tried to break up the argument between defendant and the victim and, after Sehrone LaBranche told defendant to go away and told the victim to go back to his car, defendant walked away. As defendant walked away, he turned around and told the victim, “Ah-ha ... I still got your radio. Bitch, you wanna fight?” At that point, the victim turned around and started walking toward defendant.[3] Sehrone LaBranche testified that defendant then pulled a gun out of his pants and shot the victim at close range. Defendant fled the scene. Everyone 15else, including Sehrone LaBranche’s son, Lionel LaBranche, also ran from the scene.
Sehrone and Alexis LaBranche testified that defendant did not appear afraid during the argument and that the victim did not have any type of weapon in his possession. They further testified that the victim never punched or physically hurt defendant and that defendant never gave the victim a verbal warning prior to shooting him.
A neighbor, Karen Ellis, also witnessed the shooting. She testified that she saw defendant and the victim arguing on the sidewalk near the street. Ms. Ellis testified that it appeared defendant was walking away and then for some reason he and the victim started arguing again. She stated that the victim took three or four *269 steps towards defendant, and defendant then backed up and shot the victim. She did not hear defendant give the victim any verbal warning and did not see any physical altercation between the victim and defendant before the shooting. She also testified that she did not see any weapon in the victim’s hand during the argument.
Another neighbor, Zelvin Taylor, did not witness the shooting but testified that she saw defendant, who she recognized from the neighborhood, in her backyard immediately following the shooting. She testified that defendant paced back and forth in her backyard while on his cell phone with his mother, saying, “I had to do what I had to do. I took the gun out and I shot him. I had to do what I had to do momma.” She further testified that she was afraid after hearing defendant in her backyard; she stated that defendant appeared to be bragging and did not appear to be afraid. Ms. Taylor contacted 9-1-1 to report the incident.
Sergeant Lawrence Sylvan, a patrol officer with the St. John the Baptist Parish Sheriffs Office, testified that he responded to a 9-1-1 call in reference to a | ^shooting at 8880 Houma Blvd. Sergeant Sylvan secured the crime scene and interviewed witnesses, Schrone LaBranche and Karen Ellis. Deputy Michael Pugh with the St. John the Baptist Parish Sheriffs Office testified that he collected, packaged, and secured the evidence at the crime scene. Deputy Pugh recovered a spent nine millimeter casing round from the roadway near 8880 Houma Drive and a firearm in a nearby garbage can with a magazine containing unspent rounds.[4] Deputy Pugh testified that no other weapon was recovered from the scene.
Deputy Will Stelly of the Criminal Investigation Division of the St. John the Baptist Parish Sheriffs Office testified that he investigated the homicide of the victim and that his investigation ultimately resulted in defendant’s arrest. In his initial investigation at the scene, he identified and obtained recorded statements from witnesses Karen Ellis[5], Schrone La-Branche [6], and Alexis LaBranche.[7] Detective Stelly testified that no witness accounts in his initial investigation led him to believe that a self-defense investigation was necessary.
Detective Stelly testified that, the morning following the shooting, defendant’s mother contacted the sheriffs office and advised that she would bring defendant to headquarters to turn him in. Detective Stelly testified that, upon defendant’s arrival to headquarters, he placed defendant under arrest. He advised defendant of his Miranda rights, and defendant executed with him a waiver of rights form. Detective Stelly testified that defendant did not provide any statement to police after his arrest.
In July of 2012, Detective Stelly learned of another possible witness, Ms. Eriyon Sheppard. Detective Stelly located Ms. Sheppard on Houma Drive and 17scheduled her to come into headquarters to provide a recorded statement; however, Ms. Sheppard never came to headquarters to give a *270 statement. He testified that, in his initial contact with Ms. Sheppard, she did not provide any information to lead him to believe that he needed to investigate self-defense in this case. Detective Stelly testified to his opinion that he investigated this matter fully and that only one weapon of any kind was recovered from the scene.
After the state rested its case, the defense presented the testimony of Eriyon Sheppard. Ms. Sheppard testified that she resides at 8879 Houma Drive. She testified that, on the date of the shooting, she heard a shot fired, looked outside of her bedroom window, and saw the victim lying on the ground. She further testified that she saw Lionel LaBranche, Schrone LaBranche’s son, run from the scene and across the street to her house, carrying a gun underneath his arm. She saw Lionel LaBranche run under her carport with a gun and subsequently saw him run back into the street without a gun under his arm.
Ms. Sheppard' testified that, on the date of the shooting, she informed the investigating officers of what she witnessed and gave them a key to her backyard to search for a gun. However, she testified that the officers informed her they did not locate any gun in her backyard.[8] Ms. Sheppard stated that she never provided a formal statement to police because the officers questioned the certainty of what she said she witnessed and appeared to not believe her story. Ms. Sheppard acknowledged at trial that she attended school with defendant, that she has a close relationship to defendant’s mother, and that she has spoken to defendant on the phone since he has been incarcerated.
[ ^DISCUSSION
In his sole assignment of error, defendant claims that the trial court erred in denying his motion for mistrial and motion for a new trial on the ground that the state’s witness, Detective Stelly, improperly referenced defendant’s post-arrest silence at trial. During Detective Stelly’s direct examination, the following took place:
Q... .And at that time, did you advise the defendant of his rights per Miranda?
A. Yes, ma’am, I did.
Q. Okay. And in advising him of his rights, did you execute a rights form?
A. Yes, ma’am, I did.
Q. And do you know — can you tell the jury whether or not the defendant elected to talk to the police—
Defense Counsel: Objection, Your Hon- or.
(At which point, an off-the-record bench conference took place)
[[Image here]]
The trial judge then overruled defendant’s objection and allowed the state to question Detective Stelly as to whether defendant provided a statement to police after his arrest:
Q. As part of your investigation, did you obtain a statement from the defendant?
A. No, ma’am, I did not.
Q. Why not?
A. When I advised him of his rights, he stated that he did not want to speak to me without his attorney present.
[[Image here]]
*271 Q. In your investigation after you interviewed everybody—
A. Yes, ma’am.
Q. —your initial investigation in January in talking to the witnesses was there anything that they said or anything that happened in this ease, including the crime scene evidence, evidence that was collected at the scene that made you feel like you had to investigate a self-defense issue with regards to the crime?
A. No, ma’am.
[[Image here]]
At the next recess, defense counsel orally moved for a mistrial, arguing that it was improper for the state to question Detective Stelly regarding defendant’s exercise of his Fifth Amendment privilege to remain silent after his arrest. In response, the state argued that the purpose of Detective Stelly’s testimony was simply to let the jury know that he advised defendant of his rights and that no inappropriate police conduct occurred in this case. Defense counsel replied that because there are no allegations of police misconduct or abuse in this case, the state’s questioning was improper and warrants a mistrial. The trial judge found that the state’s questioning was proper and denied defendant’s motion for mistrial. Nevertheless, at the conclusion of trial, the trial judge provided the following instruction to the jury prior to deliberations:
Upon arrest, the defendant was advised of his right to remain silent. No presumption of any kind may be raised and no inferences of any kind may be drawn from the fact that the defendant chose to exercise their [sic] constitutional rights to remain silent.
Following trial, defendant filed a motion for a new trial on the same ground — that the trial judge erred in overruling defense counsel’s objections to the [^state’s questions to Detective Stelly as to defendant’s post-arrest silence. After a hearing on the motion, the trial judge denied the motion finding that defendant failed to show any injustice as a result of Detective Stelly’s testimony regarding defendant’s post-arrest silence. The trial judge found that the state’s questions to Detective Stelly were “aimed at showing the circumstances of the defendant’s arrest and the extent of the investigation, not to exploit the defendant’s failure to claim his innocence after arrest or attack his defense.”
In this appeal, defendant assigns as error the trial judge’s denial of his motion for mistrial and motion for a new trial. For the following reasons, we find the trial judge did not abuse his discretion in his ruling on the motion for mistrial and motion for a new trial and we affirm defendant’s conviction and sentence.

Standard of Review

Motion for Mistrial

La.C.Cr.P. art. 775 provides for a mistrial if prejudicial conduct inside or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized under La.C.Cr.P. arts. 770[9] or 771. A mistrial under La.C.Cr.P. art. 775 is discretionary and is warranted only when trial error results in substantial prejudice to the defendant depriving him of a reasonable expectation of a fair trial. State v. Davis, 07-544 (La.App. 5 Cir. *272 12/27/07), 975 So.2d 60, 68, writ denied, 08-380 (La.9/19/08), 992 So.2d 952.
Under La.C.Cr.P. art. 771, a mistrial is discretionary when a witness makes an irrelevant remark that might prejudice the defendant. Article 771 gives the trial court the option to either admonish the jury, upon motion of the defendant, or, if an | n admonition does not appear sufficient, to declare a mistrial. State v. Johnson, 10-209 (La.App. 5 Cir. 10/12/10), 52 So.3d 110, 124, writ denied, 10-2546 (La.4/1/11), 60 So.3d 1248. A mistrial should be granted under Article 771 only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Thomas, 08-390 (La.App. 5 Cir. 1/27/09), 8 So.3d 80, 86-87, writ denied, 09-626 (La.11/25/09), 22 So.3d 170; State v. Pierce, 11-320 (La.App. 5 Cir. 12/29/11), 80 So.3d 1267,1271-72.
A mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to a defendant that deprives him of a reasonable expectation of a fair trial. Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed absent an abuse of .discretion. State v. Lagarde, 07-123 (La.App. 5 Cir. 5/29/07), 960 So.2d 1105, 1113-14, writ denied, 07-1650 (La.5/9/08), 980 So.2d 684.

Motion for a New Trial

Defendant also filed a motion for a new trial on the same ground that the trial judge erred in overruling defense counsel’s objections to the state’s questioning of Detective Stelly, referencing defendant’s post-arrest silence, and that the trial judge’s error warrants a new trial under the facts of this case.
Under La.C.Cr.P. art. 851(2),[10] the trial court shall grant a new trial whenever “[t]he court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error.” According to La.C.Cr.P. art 851, a new 112trial motion “is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.”
The denial of a motion for a new trial is not subject to appellate review except for an error of law. La.C.Cr.P. art. 858. Further, the ruling on a motion for a new trial is committed to the sound discretion of the trial judge and will not be disturbed on appeal absent a clear showing of abuse of that discretion. State v. Bibbins, 13-875 (La.App. 5 Cir. 4/9/14); State v. Gerard, 96-366 (La.App. 5 Cir. 11/14/96), 685 So.2d 253, 260. The merits of a motion for a new trial must be viewed with extreme caution in the interest of preserving the finality of judgments. Id.; see also State v. Rodriguez, 02-334 (La.App. 5 Cir. 1/14/03), 839 So.2d 106, 133, writ denied, 03-0482 (La.5/30/03), 845 So.2d 1061, cert. denied, 540 U.S. 972, 124 S.Ct. 444,157 L.Ed.2d 321 (2003).

Analysis

In Doyle v. Ohio[11], the United States Supreme Court held that reference *273 to a defendant’s silence at the time of his arrest for impeachment purposes violates his due process rights.[12] It is well settled that, even in cases where a defendant does not testify in his own defense, it is improper to reference the fact that an accused exercised his right to remain silent, after he had been advised of that right, solely to ascribe a guilty meaning to his silence or to undermine, by inference, an exculpatory version of events related by the accused, for the first time at trial. State v. Pierce, 11-320 (La.App. 5 Cir. 12/29/11), 80 So.3d 1267, 1272; State v. Montoya, 340 So.2d 557 (La.1976).
113In State v. George, the Louisiana Supreme Court explained:
This court has expressed its disapproval of placing before the jury evidence that the police advised the defendant of his Miranda rights at the time of his arrest when the testimony does not establish a predicate for admitting a subsequent oral or written inculpatory statement and thereby invites jurors to consider the defendant’s post-arrest silence as an impeachment of an exculpatory account later offered at trial. State v. Mosley, 390 So.2d 1302 (La.1980); Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).
State v. George, 95-0110 (La.10/16/95), 661 So.2d 975, 979.
Clearly, in this case, the prosecutor’s line of questions to the investigating officer regarding defendant’s exercise of his Fifth Amendment privilege against self-incrimination was improper and impermissible. Likewise, the trial judge’s ruling overruling defense counsel’s objection to this impermissible line of questions was also in error. See State v. Kersey, 406 So.2d 555, 560 (La.1981); State v. Smith, 336 So.2d 867, 868 (La.1976); State v. Montoya, 340 So.2d at 560.
In this case, defendant’s conviction stands only because: (1) the trial as a whole was fairly conducted; (2) the proof of guilt was strong; and (3) the prosecutor did not return to the topic of defendant’s post-arrest silence a second time in her direct or redirect and did not refer to this point in closing argument. See State v. Pierce, 80 So.3d at 1272; State v. Campbell, 97-369 (La.App. 5 Cir. 11/25/97), 703 So.2d 1358, 1361; State v. Smith, 336 So.2d at 869.
In this case, where the line of questioning objected to was argued before the judge out of the presence of the jury before the questions were asked, we cannot say that the prosecutor unwittingly fell into pursuing an unconstitutional line of questioning. While a brief reference to a defendant’s post-arrest silence does not in every case require reversal, nor is it permissible for the prosecutor to intentionally thread the needle by impermissibly laying before the jury a | ^defendant’s post-arrest silence and then carefully moving away to another line of questioning.
Nevertheless, this Court has consistently held that “a brief reference to post-Miranda silence does not mandate a mistrial or reversal where the trial as a whole was fairly conducted, the proof of guilt is strong, and the state made no use of the silence for impeachment purposes.” Pierce, supra, State v. Campbell, supra-, See also State v. Smith, 336 So.2d 867 (La.1976). (Compare to cases in which *274 post-arrest silence was stressed or emphasized at trial (State v. Grant, 99-1065 (La. App. 5 Cir. 1/25/00), 761 So.2d 10, 12-14 (wherein the defendant was repeatedly asked at trial why he didn't "talk to anybody else ... when you [the defendant] first got arrested") and State v. Montoya, 340 So.2d at 562 (wherein the prosecutor implicitly referenced the defendant's failure to testify at trial, argued at trial that the defendant had to "explain his possession [of stolen property]," and where additional errors further compounded a state witness' reference to the defendant's post-arrest silence).
In this case, the record reflects that the prosecutor did not emphasize or stress defendant's post-arrest silence. After questioning Detective Stelly about whether defendant made a statement to police after his arrest, the prosecutor moved on to question the detective about the other witness accounts, including defense witness Ms. Sheppard, to demonstrate that he completed a thorough investigation that did not involve any indication to investigate self-defense in this case.
J~Additionally, at the conclusion of trial, the trial judge provided an instruction to the jury that no presumption or inference could be drawn from defendant's post-arrest silence.'[13]
We reiterate the Louisiana Supreme Court's disapproval of "placing before the jury evidence that the police advised the defendant of his Miranda rights at the time of his arrest when the testimony does not establish a predicate for admitting a subsequent oral or written inculpatory statement and thereby invites jurors to consider the defendant's post-arrest silence as an impeachment of an exculpatory account later offered at trial." State v. Mosley, 390 So.2d 1302, 1305-06 (La.1980). However, while we clearly do not condone this improper line of questioning designed to elicit inadmissible evidence, we do not find the error warrants reversal nor a new trial under the facts of this case, where the trial as a whole was conducted fairly and the proof of defendant's guilt was overwhelmingly strong. See State v. Pierce, 80 So.3d at 1272; State v. Campbel4 97-369 (La.App. 5 Cir. 11/25/97), 703 So.2d 1358, 1361; State v. Smith, 336 So.2d at 869.
ERRORS PATENT REVIEW
We have reviewed the record for errors patent in conformity with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The record reflects that the trial court failed to adequately advise defendant of the time period for seeking post-conviction relief as required by La.C.Cr.P. art. 930.8. Accordingly, we hereby advise defendant that, pursuant to La.C.Cr.P. art. 930.8, no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the J~judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. art. 914 or 922. See State v. Ramsey, 10-333 (La.App. 5 Cir. 1/25/11), 60 So.3d 36, 42.
CONCLUSION
Accordingly, for the foregoing reasons, we affirm defendant's conviction and sentence.
AFFIRMED.

. The state moved to amend the indictment in response to defendant’s motion to quash the indictment. On June 28, 2012, defendant filed a motion to quash the indictment, asserting that defendant was seventeen at the time of the alleged offense and that, pursuant to the United States Supreme Court’s decision in Miller v. Alabama, — U.S. —, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), defendant cannot, if convicted, be sentenced to Louisiana's legislatively mandated life-sentence under La. R.S. 14:30.1. At the hearing on defendant’s motion to quash, the state made an oral motion to amend the indictment to charge defendant with manslaughter in violation of La. R.S. 14:30, which does not mandate a life-sentence. Defense counsel agreed that the amendment of the indictment would render the motion to quash moot. The trial court granted the state’s oral motion to amend the indictment on August 13, 2012, and signed a written order granting the state's motion on August 21, 2012.

. Defendant filed a motion to reconsider sentence, which the trial court denied.

. According to Sehrone LaBranche, the victim (who was thirty-two years old) told defendant (who was seventeen years old) that he was not going to do anything to defendant because defendant was “a little boy.” On cross-examination, defense counsel alluded to the fact that Sehrone LaBranche’s recorded statement indicates that, prior to the shooting, the victim told defendant, "I'll knock your ... ass out.” Sehrone LaBranche testified that she did not recall stating that to officers. The recorded statement was not introduced into evidence at trial.

. The defense stipulated that the projectile recovered from the victim’s body matched the gun recovered from the nearby trash can at 1507 Grant Dr.

. Ms. Ellis provided a recorded statement on the day of the shooting. She further identified defendant by photographic lineup as the person who shot the victim.

. Ms. LaBranche also gave a recorded statement and identified defendant in a photographic lineup as the individual who shot the victim.

. Alexis LaBranche also provided a statement to officers on July 31, 2012.

. Ms. Sheppard further testified that a few weeks after the shooting, she noticed the man-made pond in her backyard began to fill with water after it rained, which is not typical, and discussed the possibility that Lionel LaBranche hid the gun underneath the backyard pond.

. La.C.Cr.P. art. 770 provides the grounds for a mandatory mistrial and is inapplicable in this case. It provides that a mistrial shall be granted, upon motion of the defendant, when a remark or comment is made within the hearing of the jury by the judge, district attorney, or a court official during trial or in argument and that remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible or the failure of the defendant to testify in his defense.

. La.C.Cr.P. art. 851, in pertinent part, provides:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
[[Image here]]
(2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error[J

. 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

. The Supreme Court explained, "every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested_[I]t would be fundamentally unfair and a deprivation of due process to allow the arrested person’s silence to be used to impeach an explanation subsequently offered at trial.” Doyle v. Ohio, 426 U.S. at 617-18, 96 S.Ct. at 2244-45.

. In his judgment on defendant's motion for a new trial, the trial judge states that this instruction was drawn from State v. Joseph, 10-1090 (La.App. 4 Cir. 8/12/11), 71 So.3d 549, in which the trial court provided a similar instruction.